IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. DAVITA INC.,
2. KENT THIRY,

      Defendants.

---

**UNITED STATES' MOTION FOR A PROTECTIVE ORDER
GOVERNING DISCLOSURE OF DISCOVERY MATERIALS**

---

Pursuant to Rules 16(d)(1) and 49.1(e) of the Federal Rules of Criminal Procedure, the United States files this Motion for a Protective Order Governing Disclosure of Discovery Materials. The protective order proposed by the United States is attached hereto as Exhibit A.

The United States has readied the bulk of its anticipated discovery for production to Defendants and stands ready to produce it pursuant to an appropriate protective order. Given the nature of the charges and anticipated discovery, a protective order is necessary in this case. Defendants DaVita Inc. and Kent Thiry, DaVita's former CEO, are charged with two counts of violating the Sherman Antitrust Act, 15 U.S.C. § 1, by conspiring with DaVita's competitors to refrain from soliciting employees. As a result of these allegations, the discovery that the United States plans to produce includes employee personally identifying information (PII), including social security numbers and

addresses, employee salary information, and confidential business information, among other types of sensitive information.

To address these confidentiality concerns, the United States proposed a protective order to Defendants prior to the initial appearance and arraignment. Importantly, the protective order that the government proposed would not restrain Defendants' ability to use the discovery in preparing a defense by, for example, showing discovery to witnesses, experts, or mock jurors.  In fact, the order proposed by the United States expressly allows the defense to use discovery for these purposes. Nonetheless, Defendants raised objections to the government's proposal, and while certain objections were resolved through the meet and confer process, two primary issues remain.  First, whereas the United States submits that all discovery should be governed by a protective order, Defendants propose that the government should be required to review millions of potentially discoverable documents to identify those items that contain "[c]onfidential, commercially sensitive, or proprietary business information." Second, while Defendants propose that any filing referencing or attaching protected discovery must be treated as restricted Level 1 regardless of the sensitivity of the information, the government submits that Defendants should be required to confer before publicizing any discovery and the United States would move the court for further protection from public disclosure only if necessary.  For the reasons set forth below, the Court should enter the United States' proposed order and should decline to adopt Defendants' proposed modifications, which are unworkable and would result in more under seal filings.

## BACKGROUND

On July 14, 2021, a federal grand jury in this district indicted Defendants DaVita Inc. and Kent Thiry, the former CEO of DaVita, charging them with two counts of conspiring with other competing employers to suppress competition between them by agreeing to employee non-solicitation agreements, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The indictment alleges that each conspiracy was a per se unlawful restraint of interstate trade and commerce.  Count 1 alleges a conspiracy between Defendants and the related companies Surgical Care Affiliates, LLC and SCAI Holdings, LLC (collectively, SCA).  Indict. ¶¶ 1-10.

A grand jury sitting in the Northern District of Texas previously indicted SCA this year, charging them with two counts of conspiring to violate Section 1 of the Sherman Act.  ECF No. 1, *United States v. Surgical Care Affiliates, LLC, et al.*, No. 3:21-cr-00011-L (N.D. Tex. Jan. 5, 2021).  Count 1 against Defendants here charges the same conspiracy as that charged against SCA in Count 2 in the Northern District of Texas.[1]  The parties to the *Surgical Care Affiliates* matter submitted to the Court an agreed protective order that is materially the same as what the government proposed to Defendants Thiry and DaVita.  On January 28, 2021, the Hon. Sam A. Lindsay entered that order, which is attached hereto as Exhibit B.[2]

---

[1] The conduct charged in Count 2 against Defendants here involves a company and alleged co-conspirators that are not related to SCA, and the conduct charged in Count 1 against SCA in the Northern District of Texas involves a company and alleged co-conspirators that are not related to DaVita.  The charges against Defendants DaVita and Thiry are properly venued in the District of Colorado, the headquarters location of DaVita while Mr. Thiry was its CEO during the charged time periods.
[2] The proposed protective order here differs only with respect to modifications requested by Defendants during the meet and confer process and an additional

The United States stands ready to produce discovery to Defendants upon entry of the proposed protective order.  The potentially discoverable material in this case is voluminous, at least a million-and-a-half documents, and replete with confidential information.  The bulk of potentially discoverable material consists of grand jury returns from subpoenas issued to multiple companies, including competitors of DaVita and SCA.  None of these subpoena returns were marked by the producing party on a document-by-document basis for confidentiality, but companies did request confidential treatment pursuant to Federal Rule of Criminal Procedure 6(e) to protect grand jury material from public disclosure.  The potential discovery also includes grand jury transcripts and FBI 302 reports of witness examinations.

The subpoena returns and other potentially discoverable information includes documents containing PII, including social security numbers, dates of birth, and other protected information, some individually identifiable health information, and confidential business information, including financial records that contain payment records and account numbers, salary information, competitively-sensitive business information, and other sensitive personal and confidential business information.  All of this information, which Defendants acknowledge deserve protection (albeit on a document-by-document basis) is comingled with other documents potentially subject to discovery.  It may also comprise only portions of longer documents—for example, one sentence in a long e-mail, or one page of a lengthy presentation.

---

provision added by the United States to address concerns over civil discovery that arose after follow-on civil litigation was filed.

4

The potentially discoverable material also includes subpoena returns and other material pertinent to the United States' ongoing investigation into, *inter alia*, additional conduct engaged by Defendants with respect to other companies.

**ARGUMENT**

This Court has express authority to enter protective orders to govern criminal discovery. Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); *see also* Fed. R. Crim. P. 49.1(e) ("For good cause, the court may by order in a case: (1) require redaction of additional information; or (2) limit or prohibit a nonparty's remote electronic access to a document filed with the court."). Indeed, "[a] trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969). Rule 16(d) "gives district courts the discretion to determine the circumstances 'under which the defense may obtain access to discoverable information.'" *United States v. DeLeon*, 428 F. Supp. 3d 716, 756 (D.N.M. 2019) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 122 (2d Cir. 2008)). The Rule "is 'permissive' and gives district courts the ability to 'limit or otherwise regulate discovery pursuant to Rule [16(d)(1) ].'" *Id.* (quoting *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991)).

1. **Any Protective Order Requiring a Document-By-Document Confidentiality Designation Is Unworkable, Unnecessary, and Will Delay Production of Discovery.**

The proposed Protective Order will serve the fundamental interest of the Court and the parties in the prompt and efficient disclosure of discovery to Defendants by

5

eliminating the need for a document-by-document evaluation of the relevance and sensitivity of the information contained in the Protected Materials.  During meet and confer engagements, Defendants indicated that the government's proposed protective order should be modified to impose upon the United States an obligation to designate particular documents that contain "[c]onfidential, commercially sensitive, or proprietary business information."  But this proposal would be completely unworkable given that the vast majority of the potentially discoverable documents at issue in this case originated from multiple third parties with different business models and operations.  A document's sensitivity is not always obvious on its face and the lawyers for the United States are simply unable to determine whether any given third party would consider any one of over a million documents to contain "[c]onfidential, commercially sensitive, or proprietary business information."

Any arrangement which would require the third parties to comb through universes of documents that they produced to identify individual sensitive documents would impose an undue burden upon the producing parties, many of whom are DaVita's competitors.  Doing so would be an extraordinarily labor-intensive process, which would surely upset the case schedule proposed by the litigants in this matter.[3]  Given that only a small subset of the documents which comprise the total universe of discovery will actually be at issue in the case, any process which requires a review of *every* document produced in discovery would impose an oppressive and ultimately unnecessary burden on both the United States and the producing parties.

---

[3] If the Court were to adopt the government's proposed discovery order, the government would be able to produce discovery within days.

Rather than imposing a system of document-by-document review, the Court should endorse the government's proposal, which protects all documents produced in discovery. This approach is consistent with how other courts have protected sensitive documents in document-intensive white-collar crime prosecutions, including the order that the Hon. Sam A. Lindsay entered in the closely-related *United States v. Surgical Care Affiliates, LLC* matter.[4]  *See* Ex. B; Protective Order ¶ 2, ECF No. 22, *United States v. Harwin*, No. 20-cr-00115 (M.D. Fla. Oct. 2, 2020) ("This Protective Order . . . applies to the discovery materials produced by the government . . . ."); Order on Mot. for a Protective Order ¶ 1, ECF No. 29, *United States v. Gaines*, No. 20-cr-020 (D. Minn. Feb. 25, 2020) ("'Protected Material' includes all information produced by the government in this case, except matters of public record, the defendant's own statements and records, and the defendant's criminal history information."). Given that the government's proposed protective order does not restrain Defendants from using discovery to defend against the charges, by, for example, using discovery as trial exhibits or showing such documents to witnesses or experts, neither Defendant is able to articulate any prejudice resulting from a regime that protects all discovery.

The unique circumstances of another Antitrust Division matter in this district, which Defendants have referenced as support for their proposal, show why the United States' proposal is necessary here. In *United States v. Penn*, No. 1:20-cr-00152-PA (D. Colo.), the indictment followed a related private, civil antitrust action. In large part, the

---

[4] Indeed, a protective order that departs substantially from the order entered by Judge Lindsay in the *Surgical Care Affiliates* matter, which is what the defendants are seeking, would prejudice the United States. Doing so would require the United States to treat overlapping sets of discovery differently in two factually similar matters proceeding in different districts.

7

third-party documents subject to criminal discovery in *Penn* had already been produced in the civil action, and as such the third-parties had already made document-by-document confidentiality designations pursuant to the civil protective order. Therefore, the United States took no issue with affording further protection to certain categories of confidential documents because those documents were already marked as confidential on a document-by-document basis by owner of those documents.

### 2. Defendants' Proposal Would Result in All Discovery Filed Under Seal.

The United States' proposed protective order would not require any document to be redacted or filed under seal, and does not contemplate automatic redaction or sealing with respect to confidential business records, unlike Defendants' proposal. Rather, the United States' proposes that Defendants provide the United States with notice prior to publicly disclosing documents they received through criminal discovery, which affords the United States the opportunity to seek an additional order sealing or redacting the information if necessary.[5] This provision would allow the United States to move to protect from public disclosure, for example, a document that could tip off a third party about the existence, scope, or direction of the United States' ongoing criminal investigation.

Defendants' proposal, on the other hand, would require a party seeking to reference a document marked as "confidential" to either redact that reference or file the

---

[5] The United States' proposal on this point is also the same as that already entered in the *Surgical Care Affiliates* matter applicable to Defendants' alleged co-conspirators, SCA. *Compare* Ex. A ¶ f. *with* Ex. B ¶ f. By entering Defendants' proposal, documents could be filed under seal on this Court's docket that would otherwise be publicly filed on the *Surgical Care Affiliates* docket. Entering the United States' protective order would ensure consistency and equal treatment between two similarly situated alleged co-conspirators.

pleading under seal. This proposal assumes that all "confidential" documents can be individually designated as such, which, as the United States demonstrated above, is unworkable. Defendants' proposal would undoubtedly lead to more filings under seal and further motions practice over whether documents or motions should be filed under seal. In contrast, the United States' proposal envisions limited motions practice where necessary to protect the United States' interests.

## CONCLUSION

Defendants cannot identify any meaningful prejudice to their defense that would result from the entry of the protective order sought by the United States. Accordingly, the Court should enter this order.

By: s/ William J. Vigen
William J. Vigen
Megan S. Lewis
Anthony W. Mariano
Trial Attorneys
U.S. Department of Justice, Antitrust Division
Washington Criminal II Section
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: 202-598-8145 / 202-353-2411 / 202-598-2737
FAX: 202-514-9082
E-mail: william.vigen@usdoj.gov
E-mail: megan.lewis@usdoj.gov
E-mail: anthony.mariano@usdoj.gov

## CERTIFICATE OF SERVICE

      I certify that on August 10, 2021, I filed this document with the Clerk of the Court for the United States District Court of Colorado using the CM/ECF system, which will serve this document on all counsel of record.

s/ Anthony W. Mariano
Anthony W. Mariano
