IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA

       Plaintiff,

  v.

DAVITA INC.;
KENT THIRY

       Defendants.

---

**BRIEF OF *AMICUS CURIAE* NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS**

---

DAVID OSCAR MARKUS
*Co-Chair*, NACDL
AMICUS COMMITTEE
40 N.W. Third Street,
Penthouse One
Miami, FL 33128
(305) 379-6667

CARTER G. PHILLIPS*
JEFFERY T. GREEN
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, D.C. 20005
(202) 736-8000
cphillips@sidley.com

BENJAMIN R. NAGIN
BRIANNA O. GALLO
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

TACY F. FLINT
RACHEL L. HAMPTON
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

Counsel for *Amicus Curiae* National Association of Criminal Defense Lawyers

September 21, 2021    * Counsel of Record

TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES ............................................................................ | ii |
| INTRODUCTION ........................................................................................... | 1 |
| I. District Courts Can and Should Dismiss Cases Where There are Substantial Questions of Law Related to Novel Prosecutions. ............... | 1 |
| A. Supreme Court Precedent Counsels Dismissal. .................................. | 1 |
| B. Judicial Fairness and Efficiency Weigh In Favor of Dismissal. ......... | 5 |
| II. Substantial Due Process Concerns Exist Here ......................................... | 8 |
| CONCLUSION................................................................................................ | 13 |

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*Arthur Anderson LLP* v. *United States*, 544 U.S. 696 (2005) ....................................... 7

*Aya Healthcare Servs., Inc.* v. *AMN Healthcare, Inc.*, — F.4th —, 2021
   WL 3671384 (9th Cir. Aug. 19, 2021) .................................................................. 11

*Bogan* v. *Hodgkins*, 166 F.3d 509 (2d Cir. 1999) .......................................................... 11

*Bond* v. *United States*, 572 U.S. 844 (2014) ............................................................ 1, 2

*Consultants & Designers, Inc.* v. *Butler Serv. Grp., Inc.*, 720 F.2d 1553
   (11th Cir. 1983) ..................................................................................................... 11

*Dickerson* v. *United States*, 530 U.S. 428 (2000) .......................................................... 6

*Dowling* v. *United States*, 473 U.S. 207 (1985) ............................................................. 4

*Eichorn* v. *AT & T Corp.*, 248 F.3d 131 (3d Cir. 2001) ................................................ 11

*Guedes* v. *Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 S.
   Ct. 789 (2020) (statement of Gorsuch, J.) ........................................................... 3, 7

*Kelly* v. *United States*, 140 S. Ct. 1565 (2020) .................................................... 2, 3, 12

*Leegin Creative Products Inc.,* v. *PSKS, Inc.*, 551 U.S. 877 (2007) ......................... 3, 5

*Marks* v. *United States*, 430 U.S. 188 (1977) ................................................................ 2

*McBoyle* v. *United States*, 283 U.S. 25 (1931) .............................................................. 4

*McDonnell* v. *United States*, 136 S. Ct. 2355 (2016) .................................................... 4

*Nat'l Collegiate Athletic Ass'n* v. *Alston*, 141 S. Ct. 2141 (2021) ..................... 3, 10, 12

*Quinonez* v. *NASD*, 540 F.2d 824 (5th Cir. 1976) ....................................................... 11

*Skilling* v. *United States*, 561 U.S. 358 (2010) ......................................................... 4, 9

*Taggart* v. *Lorenzen*, 139 S. Ct. 1795 (2019) .............................................................. 12

TABLE OF AUTHORITIES–continued

*United States* v. *Apel*, 571 U.S. 359 (2014) ................................................................... 4

*United States* v. *Aguilar*, 515 U.S. 593 (1995) ............................................................... 4

*United States* v. *Salazar*, 323 F.3d 852 (10th Cir. 2003) ............................................... 5

*United States* v. *Santos*, 553 U.S. 507 (2008) ..................................................... 7, 9, 13

*United States* v. *U.S. Gypsum Co.*, 438 U.S. 422 (1978) .......................................... 8, 9

*Van Buren* v. *United States*, 141 S. Ct. 1648 (2021) ...................................................... 4

*Weisfeld* v. *Sun Chem. Corp.*, 210 F.R.D. 136 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004) ................................................................................... 11

*White Motor Co.* v. *United States*, 372 U.S. 253 (1963) .............................................. 11

*Williams* v. *United States*, 458 U.S. 279 (1982) ............................................................ 4

*Yates* v. *United States*, 574 U.S. 528 (2015) .................................................................. 2

ACTS, STATUTES, AND RULES

Chemical Weapons Convention Implementation Act of 1998 ...................................... 2

Sarbanes-Oxley Act of 2002 ......................................................................................... 2

Sherman Act ........................................................................................................ *Passim*

18 U.S.C. § 1512(b) ...................................................................................................... 7

18 U.S.C. § 3288 ........................................................................................................... 6

18 U.S.C. § 3731 ........................................................................................................... 8

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) ............................................. 1, 5, 6

Supreme Court Rule 10 ................................................................................................ 4

TABLE OF AUTHORITIES–continued

OTHER AUTHORITIES

Dep't of Justice, *Antitrust Division Manual* (5th Ed.) .................................................. 9

George E. Garvey, *Sherman Act and the Vicious Will: Developing
    Standards for Criminal Intent in Sherman Act Prosecutions*, 29
    Cath. U. L. Rev. 389, 389 (1980) ............................................................................. 8

Jed S. Rakoff, *Why Innocent People Plead Guilty*, THE NEW YORK
    REVIEW (Nov. 20, 2014),
    https://www.nybooks.com/articles/2014/11/20/why-innocent-people-
    plead-guilty/ ............................................................................................................. 5

Lucian E. Dervan, *Overcriminalization 2.0: The Symbiotic Relationship
    Between Plea Bargaining and Overcriminalization* ............................................... 6

# ARGUMENT

It is axiomatic that due process principles restrict criminal liability to violations of laws of which the accused has fair notice. Criminal liability may not attach to conduct that is beyond the scope of an unambiguous criminal proscription—and all close calls must be resolved in favor of the defendant. Where a criminal violation is not supported by clear, existing authority—or where it is even a close question—the reviewing court should dismiss the criminal indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v). Doing so ensures fairness by avoiding the grave harms associated with criminal prosecution—which frequently cannot be remedied by eventual reversal on appeal—while preserving the Department's ability to pursue the prosecution if a reviewing court sees the law differently. These principles strongly support dismissal of the indictment here. Existing authority does not support criminal liability on the basis of a no-solicitation agreement, which no court has ever held to be a *per se* violation of the Sherman Act. Allowing the prosecution to proceed in these circumstances would be inconsistent with existing law and the Department's own policy statements—and would thus violate due process.

## I. District Courts Can and Should Dismiss Cases Where There are Substantial Questions of Law Related to Novel Prosecutions.

### A. Supreme Court Precedent Counsels Dismissal.

The Supreme Court has consistently warned the Department about prosecutions based upon overly expansive constructions of criminal statutes. In *Bond* v. *United States*, 572 U.S. 844 (2014), for example, the Department prosecuted a wife

1

who attempted to use toxic chemicals against her husband's lover. *Id.* at 848, 852. Bond was charged with violations of the Chemical Weapons Convention Implementation Act of 1998, conditionally pleaded guilty, and challenged her conviction. *Id.* at 853–54. The Supreme Court unanimously held that the federal chemical warfare statute was not meant to apply to Bond's conduct—an act of romantic jealous revenge—and that it was "incumbent upon the federal courts to be certain of Congress' intent" to "assure[] that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *Id.* at 858–60 (citations omitted); see also *id.* at 871–72 (Scalia, J., concurring in judgment) (criminal statutes must be interpreted with a "realistic assessment[ ] of congressional intent").

Similarly, in *Yates* v. *United States*, 574 U.S. 528 (2015), Justice Ginsburg, writing for a four-justice plurality, rejected the application of the Sarbanes-Oxley Act of 2002—a federal securities fraud law enacted as a reaction to the Enron scandal—to a federal felony prosecution, the subject matter of which concerned "small fish." *Id.* at 547. Justice Alito's concurrence, which may well be controlling under *Marks* v. *United States,* 430 U.S. 188, 193 (1977), was influenced by the title of the statute which made reference to "records" and not to "fish." And in *Kelly* v. *United States*, 140 S. Ct. 1565 (2020), the Supreme Court recently reversed convictions arising out of the "Bridgegate" scandal, finding the Department's interpretation of the federal fraud statutes at issue threatened a "sweeping expansion of federal criminal jurisdiction."

*Id.* at 1574 (quoting *Cleveland* v. *United States*, 531 U.S. 12, 24 (2000)). The Court's decision in *Kelly* was unanimous as was its decision this Term in *Nat'l Collegiate Athletic Ass'n* v. *Alston*, 141 S. Ct. 2141 (2021) holding, in a civil action, that the NCAA's compensation restrictions are properly subject to a "rule of reason" analysis rather than a per se prohibition. *Id.* at 2156 ("aware that there are often hard-to-see efficiencies attendant to complex business arrangements—we take special care not to deploy [] condemnatory tools until we have amassed 'considerable experience with the type of restraint at issue'") (quoting *Leegin Creative Products Inc.,* v. *PSKS, Inc.,* 551 U.S. 877, 886-87 (2007)).

Even more recently, the Supreme Court has been vocal against "bureaucratic pirouetting" in criminal cases. As Justice Gorsuch noted in a statement accompanying the denial of a petition for a writ of certiorari, the Supreme Court has "never held that the Government's reading of a criminal statute is entitled to any deference." *Guedes* v. *Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 S. Ct. 789, 790 (2020) (statement of Gorsuch, J.) (quoting *United States* v. *Apel*, 571 U.S. 359, 369 (2014)). When "[t]he law hasn't changed, only an agency's interpretation of it," courts need not defer to "bureaucratic pirouetting." *Id.* at 790–91.

The Department's tin ear to the Supreme Court's rebukes has ensured that these cases are a regular part of the Supreme Court's docket—as well as the subject

of regular commentary from the Justices.[1] These cases stand out both for their impact and their unusual presence on the Supreme Court's very limited docket. What is more striking is that these cases often do not fit the traditional mold of arising out of a split of authority among the circuit courts of appeal or presenting a holding that is contrary to established Supreme Court precedent. See Supreme Court Rule 10. In the parlance, they are "one-offs"—yet there is good reason for the Court to grant review. Such prosecutions represent severe due process notice concerns, particularly the concern of overcriminalization of otherwise permissible conduct in commercial and regulatory fields where Congress has not clearly criminalized such conduct. Allowing these cases to go forward with obvious flaws risks more prosecutions of the same ilk, gives prosecutors overwhelming leverage at the negotiating table, and allows prosecutors to collect more fines and seek longer periods of incarceration for

---

[1] *See also, e.g.*, *Van Buren* v. *United States*, 141 S. Ct. 1648, 1661 (2021) ("[T]he Government's interpretation of the statute would attach criminal penalties to a breathtaking amount of commonplace computer activity"); *McDonnell* v. *United States*, 136 S. Ct. 2355, 2368–75 (2016) (narrowly interpreting an "official act" in the federal bribery statutes and expressing concerns about overbroad readings of criminal laws); *Skilling* v. *United States*, 561 U.S. 358, 411 (2010) ("honest-services fraud does not encompass conduct more wide ranging than the paradigmatic cases of bribes and kickbacks, we resist the Government's less constrained construction absent Congress' clear instruction otherwise."); *United States* v. *Aguilar*, 515 U.S. 593, 600 (1995) ("We have traditionally exercised restraint in assessing the reach of a federal criminal statute"); *Dowling* v. *United States*, 473 U.S. 207, 227 (1985) ("[T]he rationale supporting application of the statute under the circumstances of this case would equally justify its use in wide expanses of the law which Congress has evidenced no intention to enter by way of criminal sanction."); *Williams* v. *United States*, 458 U.S. 279 (1982); *McBoyle* v. *United States*, 283 U.S. 25, 27 (1931) ("[A] fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.").

individual defendants.

### B.     Judicial Fairness and Efficiency Weigh In Favor of Dismissal.

As the Supreme Court's repeated admonitions make clear, when the Department issues a criminal indictment based on a novel legal theory of prosecution, it must be closely scrutinized to determine if the attempted prosecution falls squarely within the statutory proscription. A motion to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) can and should be granted at the *outset* of criminal proceedings if the Department cannot establish that its theory of prosecution is well supported in law and, especially in antitrust matters, by considerable precedent. See *Leegin* 551 U.S. at 886.

Blessing a novel prosecution theory hands prosecutors tremendous leverage at the bargaining table—leverage that often cannot be resisted, even by the innocent[2] and certainly not by any business that wishes to remain in existence. Indeed, in 2020, 97.8 percent of all federal defendants pleaded guilty. Fiscal Year 2020 Overview of Federal Criminal Cases, at 8 (U.S. Sentencing Comm'n 2020). When a defendant enters into a plea deal, however, challenges to the prosecution's legal theory are generally waived and therefore escape further review. See*, e.g.*, *United States* v. *Salazar*, 323 F.3d 852, 856 (10th Cir. 2003). Plea bargaining thus effectively shields novel prosecution theories from legal scrutiny by anyone other than Department of

---

[2] *See* Jed S. Rakoff, *Why Innocent People Plead Guilty*, THE NEW YORK REVIEW (Nov. 20, 2014), https://www.nybooks.com/articles/2014/11/20/why-innocent-people-plead-guilty/.

5

Justice personnel who endorsed the theory in the first place. See also Lucian E. Dervan, *Overcriminalization 2.0: The Symbiotic Relationship Between Plea Bargaining and Overcriminalization*, 7 J.L. Econ. & Pol'y 645, 653 (2011) ("Despite the ever-growing number of Americans captured by the criminal justice system through an increasingly wide application of novel legal theories and overly-broad statutes, these theories and statutes are seldom tested. No one is left to challenge their application—everyone has pleaded guilty instead.").

Even where a defendant resists the pressures of plea bargaining, allowing a case to proceed to trial so that the prosecution can "present its evidence" in support of a novel theory imposes grossly disproportionate harms on the accused, with minimal countervailing benefit to the Department and the broader public that it serves. Acceding to the prosecution's wishes to "bring its case" will not sharpen or otherwise contextualize the *legal* issues, which may be assessed on the indictment alone under Rule 12(b)(3)(B)(v). And the delay risks little: where the Department's reading of the law is approved by reviewing courts, trial and conviction (or acquittal) can swiftly follow. *E.g.*, *Dickerson* v. *United States*, 530 U.S. 428 (2000) (successful suppression motion for Miranda violations litigated on appeal and at the United States Supreme Court, following which the defendant was convicted at trial); see also 27 F. App'x 236, 241 (4th Cir. 2001) (affirming conviction), 18 U.S.C. § 3288 (providing for tolling while the dismissal of an indictment is appealed).

By contrast, the risks for the accused of proceeding to trial are immense. The damaging effects that criminal defendants suffer, even if criminal charges are ultimately dropped or unsuccessful at trial or on appeal, cannot be undone. This is especially true of prosecutions like the instant one against businesses and their leaders, which inflict major reputational harms. One dramatic example is *Arthur Anderson LLP* v. *United States*, 544 U.S. 696 (2005). The Supreme Court ultimately reversed the conviction of Arthur Anderson as unsupported by law—holding that the jury instructions advocated for by the Department improperly allowed the jury to convict for conduct beyond the scope of the relevant statute, 18 U.S.C. § 1512(b). See 544 U.S. at 706–08. But the reversal was meaningless to the defendant: the prosecution had already destroyed the nearly-century-old firm, which simply disappeared.

It is thus imperative that the legal validity of this prosecution's theory be subjected to careful judicial scrutiny *at the outset*—before the irreparable harms of a legally unsupported prosecution accrue. Courts "owe" criminal defendants "an independent determination that the law actually forbids their conduct. A 'reasonable' prosecutor's say-so is cold comfort in comparison. . . . [W]e have emphasized, courts bear an 'obligation' to determine independently what the law allows and forbids." *Guedes*, 140 S. Ct. at 790 (statement of Gorsuch, J.) (citations omitted). That obligation is particularly pronounced in the context of a novel deployment of a criminal statute, as here, because the Supreme Court has long commanded that a "tie

7

must go to the defendant." *United States* v. *Santos*, 553 U.S. 507, 514 (2008).

All the more reason, then, for district courts to ensure that tenuous legal theories are thoroughly vetted at the earliest stage. If the prosecution of DaVita and Mr. Thiry is permitted to proceed, not only they and their reputations will suffer, but also there will be more prosecutions—and more investigations—on the same novel theory, before any appellate court has an opportunity to assess the viability of that theory. In contrast, a dismissal by this Court would permit the Department to take an immediate appeal (18 U.S.C. § 3731)—fully preserving its ability to pursue the present prosecution and others in the event that the Tenth Circuit or the Supreme Court endorses the Department's unprecedented application of the Sherman Act. NACDL respectfully submits that this Court pursue the latter path, for the interest of justice and the pursuit of efficiencies for all participants in the criminal justice system.

## II. Substantial Due Process Concerns Exist Here.

The criminal statute under which DaVita and Mr. Thiry are accused—the Sherman Act—is "unusually vague." George E. Garvey, *The Sherman Act and the Vicious Will: Developing Standards for Criminal Intent in Sherman Act Prosecutions*, 29 Cath. U. L. Rev. 389, 389 (1980). In the Supreme Court's words, "[t]he Sherman Act, unlike most traditional criminal statutes, does not, in clear and categorical terms, precisely identify the conduct which it proscribes." *United States* v. *U.S. Gypsum Co.*, 438 U.S. 422, 438 (1978).

8

This has important due process implications, because the Due Process Clause mandates that a criminal offense be defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited" and "in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling*, 561 U.S. at 402–03 (quoting *Kolender* v. *Lawson*, 461 U.S. 352, 357 (1983)). Moreover, when there is any question whether a criminal statute prohibits the defendant's conduct, the rule of lenity applies to prevent the loss of liberty. *Santos*, 553 U.S. at 514. The Supreme Court has construed the Sherman Act consistent with this fundamental principle. See *U.S. Gypsum*, 438 U.S. at 437.

In a nod to these due process requirements, the Department's Antitrust Division has adopted a policy of restricting criminal prosecution for Sherman Act violations to the most egregious, clearly unlawful cases. U.S. Dep't of Justice, *Antitrust Division Manual* (5th Ed.) at III-12. The Department has provided that it will pursue criminal investigation and prosecution only "in cases involving horizontal, per se unlawful agreements, such as price fixing, bid rigging, and customer and territorial allocations." *Id.* The Department will use only civil process "with respect to other suspected antitrust violations, including those that require analysis under the rule of reason," or where "the case law is unsettled or uncertain" or "there are truly novel issues of law or fact presented." *Id.*

Limiting criminal prosecution to well-established *per se* violations assures compliance with constitutional notice requirements, because the *per se* rule cannot

9

be applied until courts "have amassed considerable experience with the type of restraint at issue and can predict with confidence that it would be invalidated in all or almost all instances" *Alston*, 141 S. Ct. at 2156 (cleaned up). By definition, then, a Sherman Act violation that is *per se* unlawful is one where—notwithstanding the vagueness of the statutory text—extensive case law authority provides notice that the conduct is unlawful.

The prosecution that the Department is pursuing here does not fall within these guidelines. Under the law that exists today (and in all of the years before today), there has been nothing close to a "fair warning" that no-solicitation or no-hire agreements constitute *per se* violations of the Sherman Act that might give rise to criminal liability. Just the opposite.

Assume an "ordinary" staffing company wanted to enter a reciprocal agreement with a competitor not to recruit employees in connection with their separate efforts to support a common client (whether it be a hospital, a financial services company or otherwise). Assume that company had a penchant not just for client service but for reviewing antitrust cases to ensure it does not run afoul of the Sherman Act. The company would learn that neither the Supreme Court nor any federal court of appeals has *ever* held that a no-solicitation agreement between competitors was *per se* illegal.

If the company were to look more broadly, it would see that in the Second Circuit, restrictions on hiring among separate companies for sales agents did not

merit *per se* treatment. *Bogan* v. *Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999). It would also see that the Third Circuit rejected *per se* treatment for an agreement on hiring employees from a spun-off company for a period of time after the sale. *Eichorn* v. *AT & T Corp.*, 248 F.3d 131, 142–44 (3d Cir. 2001). The company might take particular solace in the Third Circuit's reference to Supreme Court precedent that "[t]he per se illegality rule applies only in those cases where the business practice in question is one, which on its face, has 'no purpose except stifling of competition.'" *Id.* (quoting *White Motor Co.* v. *United States*, 372 U.S. 253, 263 (1963)). And it would find further reassurance in the Ninth and Eleventh Circuits. *E.g.*, *Aya Healthcare Servs., Inc.* v. *AMN Healthcare, Inc.*, — F.4th —, 2021 WL 3671384, at *5–6 (9th Cir. Aug. 19, 2021) (*per se* liability did not apply to agreement that allowed the defendant to "collaborate with its competitor for the benefit of its client without 'cutting its own throat'" by risking the "los[s of] its personnel during the collaboration"); *Consultants & Designers, Inc.* v. *Butler Serv. Grp., Inc.*, 720 F.2d 1553, 1561 (11th Cir. 1983) (no-hire agreement not "an appropriate candidate for per se treatment"). And so on. See *Weisfeld* v. *Sun Chem. Corp.*, 210 F.R.D. 136, 143 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004) ("Given the limited application of the *per se* rule, and that Plaintiffs . . . have cited no case requiring the *per se* rule's use in the context of a no hire agreement, this Court finds that Defendants' agreement is likely to be reviewed under the rule of reason."); see generally *Quinonez* v. *NASD*, 540 F.2d 824 (5th Cir.

11

1976) (alleged multi-employer restraint to prevent hiring of certain employees should be considered after a detailed factual review).

No doubt the company would also review the Supreme Court's most recent decision on labor and compensation restraints, *Alston*, which confirms just how narrowly and rarely the *per se* test is applied. 141 S. Ct. 2141, 2155–56 (2021). Even though the parties in *Alston* agreed on the scope of the relevant market, *id.* at 2151–52, agreed that the affected persons (*i.e.*, student-athletes) had "nowhere else to sell their labor," *id.* at 2156, and agreed that the NCAA's "admitted horizontal price fixing" of student-athlete's compensation "*in fact* decrease[d] the compensation that student-athletes receive[d] compared to what a competitive market would yield," *id.* at 2154, the Court unanimously concluded that the rule of reason, not *per se* liability, applied. That is because in virtually every case, "[w]hether an antitrust violation exists necessarily depends on a careful analysis of market realities." *Id.* at 2158.

The Department may not now unilaterally determine that non-solicitation agreements are criminally sanctionable—particularly in the face of so much contrary precedent and the Department's own published guidance. This Court should independently review the Department's about-face here in light of the Supreme Court's emphatic and ongoing direction that criminal and even serious civil penalties may arise only from clear prohibitions. See, *e.g.*, *Kelly*, 140 S.Ct. at 1574 ; *McDonell*, 136 S.Ct. at 2372–73 (2016); cf. *Taggart* v. *Lorenzen*, 139 S. Ct. 1795, 1799 (2019) (not

even *civil* contempt may be imposed unless "there is *no fair ground of doubt* as to" the impropriety of the challenged conduct (emphasis in original)).

If the Department is offended by the kind of agreement it is challenging here, it has a remedy: it can seek injunctive relief. And if courts over time conclude that these agreements lack any pro-competitive value, then eventually the challenged conduct could be deemed *per se* illegal. But what the Department cannot do is start with a criminal prosecution based on a novel interpretation of the Sherman Act's inherently imprecise language. Having conduct determined, again and again, as plainly anticompetitive is a prerequisite for *per se* status—and, in turn, for criminal prosecution. That has not happened with respect to no-solicit (or no-hire) agreements, which have consistently been upheld by myriad circuit courts. This is not a close question under existing precedent. But even if it were, "the tie must go to the defendant." *Santos*, 553 U.S. at 514.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the indictment.

Dated: September 21, 2021                    Respectfully submitted,

*/s/ Carter G. Phillips*

Carter G. Phillips*
Jeffery T. Green
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, D.C. 20005
(202) 736-8000
cphillips@sidley.com
jgreen@sidley.com

David Oscar Markus
*Co-Chair*, NACDL
AMICUS COMMITTEE
40 N.W. Third Street,
Penthouse One
Miami, FL 33128
(305) 379-6667

Benjamin R. Nagin
Brianna O. Gallo
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
bnagin@sidley.com
bgallo@sidley.com

Tacy F. Flint
Rachel L. Hampton
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
tflint@sidley.com
rhampton@sidley.com

*Counsel for Amicus Curiae National Association of Criminal Defense Lawyers*