IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA,

  Plaintiff,

v.

1. DAVITA INC.,
2. KENT THIRY,

  Defendants.

## UNITED STATES' NOTICE OF ADDITIONAL AUTHORITY

  The United States files this notice to bring to the Court's attention an additional, recently decided authority in support of its opposition (Dkt. No. 67) to Defendants' motion to dismiss (Dkt. No. 49). On November 29, 2021, in *United States v. Jindal, et al.*, No. 4:20-cr-00358-ALM-KPJ (E.D. Tex.)—attached to this Notice as Exhibit A—the district court denied a motion to dismiss an indictment charging the defendants with a *per se* Section 1 Sherman Act violation for entering into an agreement to fix wages. Ex. A at 1-2. In denying the motion to dismiss, the district court rejected the defendants' arguments that the indictment's allegation of wage fixing did "not identify a *per se* Sherman Act violation" and violated "due process under the Fifth and Sixth Amendments because they did not receive 'fair warning' the conduct was criminal, and the *per se* designation improperly promotes a presumption of intent." *Id.* at 7. The court's reasoning is relevant to several of the issues discussed at the hearing on Defendants' motion to dismiss.

  At the outset, the district court in *Jindal* noted that the indictment "does not allege any of the elements of a rule-of-reason offense." Ex. A at 7. It therefore explained that "the Indictment

1

must be dismissed if it fails to state a cognizable *per se* offense under the Sherman Act," and that this was "a question of law for the Court." *Id.* at 7-8. So too here, the Indictment alleges *per se* offenses and does not allege certain elements of a rule-of-reason offense, such as market power. The district court's opinion in *Jindal* is therefore relevant to the Court's third question at the hearing: whether the Court must determine at this junction whether the Indictment states a *per se* offense.

As to the sufficiency of the *per se* charge for wage fixing, and relevant to this Court's first and second questions relating to whether the Indictment here charges a *per se* market allocation, the district court in *Jindal* recognized "that the facts of this case do not present those typical of a price-fixing agreement," Ex. A at 9, but that "[t]he Supreme Court has made clear that the Sherman Act applies equally to all industries and markets—to sellers and buyers, to goods and services, and consequently to buyers of services—otherwise known as employers in the labor market," *id.* at 10 (citing *Anderson v. Shipowners' Ass'n of Pac. Coast*, 272 U.S. 359, 361-65 (1926)). The district court noted that "[o]ther courts have also recognized that wage-fixing conspiracies—or horizontal agreements among buyers in the labor market—are illegal *per se* like other price-fixing agreements," *id.* at 14, and rejected the defendants' argument that these were all civil cases as a "distinction [that] is irrelevant," *id.* at 15: "Just because this is the first time the Government has prosecuted for this type of offense does not mean that the conduct at issue has not been illegal until now. Rather, as these cases indicate, price-fixing agreements— even among buyers in the labor market—have been *per se* illegal for years." *Id.* Similarly here, although this Court may be presented with one of the first prosecutions for a labor-market allocation, the civil nonsolicitation and no-hire cases cited by the United States in its opposition

show that these agreements are *per se* unlawful.

The district court in *Jindal* also rejected the same argument that Defendants advance here: that the court needed "considerable experience with the type of restraint at issue." Ex. A at 15. The district court explained that "[j]udicial experience informs the decision to recognize a '*new per se* rule,'" *id.* (quoting *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 350 n.19 (1982)), but "[p]rice-fixing agreements, as horizontal restraints, have long been held to merit a *per se* designation," *id.*, and "courts 'have [] considerable experience with the *type of restraint* at issue'—price-fixing agreements," *id.* (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007)). "And though no appellate court has ever specifically found that a price-fixing agreement among employers in the labor market is *per se* illegal [that] does not mean the Court is recognizing a new *per se* rule. . . . Rather, a restraint that is 'tantamount to' *per se* unlawful conduct 'falls squarely within the tradition[al] *per se* rule.'" *Id.* at 15-16 (quoting *Catalano, Inc. v. Target Sales Inc.*, 446 U.S. 643, 648 (1980)). Here, the charged conspiracy is "tantamount to" the *per se* unlawful customer-allocation agreements cited by the United States in its opposition, *see* Opp. at 6-8, because Defendants agreed with their horizontal competitor not to compete over employees, thereby allocating the current employees to their current employer.

The district court in *Jindal* also rejected the defendants' argument—advanced by Defendants here—that possible procompetitive benefits of the wage-fixing agreement should remove it from *per se* treatment: "Undeniably, 'Supreme Court jurisprudence is clear: where the *per se* rule applies, it is of no consequence that an agreement could potentially bring net economic benefits to some part of the market.'" Ex. A at 16-17 (quoting *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1277 (10th Cir. 2018)).

As to the constitutional issues raised by the *Jindal* defendants, the district court rejected a claim—analogous to an argument advanced by Defendants here—that "because no court has found that purported wage-fixing agreements constitute criminal conduct and neither the Supreme Court nor any Court of Appeals has held wage fixing to be *per se* unlawful, then Defendants 'could not possibly have had fair warning that the conduct alleged in the Indictment may be criminal.'" Ex. A at 19-20. The district court reasoned that "the Supreme Court has long recognized that § 1 categorically prohibits *per se* unlawful restraints across all markets and industries—including restraints on the buyer side and in the labor market." *Id.* at 21 (citing *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 235-36 (1948); *Anderson*, 272 U.S. at 361–63)). "Thus, decades of precedent gave Defendants more than sufficient notice that agreements among competitors to fix the price of labor are *per se* illegal." *Id.*  And "the numerous district court decisions holding that agreements to fix the compensation of employees are per se unlawful reinforce this conclusion." *Id.* The same is true here.  Supreme Court and circuit precedents have long made clear that agreements among competitors to allocate markets, including via agreements not to solicit, are *per se* unlawful, and district court decisions have held that agreements among employers not to hire or solicit employees are *per se* unlawful. *See* Opp. at 6-12. Thus, "[a]t a minimum, these decisions foreclose Defendants' argument because it cannot be said that 'no[] [] prior judicial decision has fairly disclosed [Defendants' conduct] to be within [the] scope [of the Sherman Act].'"  Ex. A at 21 (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997)).

Moreover, the district court explained, its holding "is not a 'novel' construction of the Sherman Act—it comports with previous broad interpretations of the Act and is a logical

4

application of precedent." Ex. A at 21. And, the district court further opined, the fact "that 'no court has found that purported wage-fixing agreements constitute criminal conduct under the Sherman Act' does not mean that Defendants' did not have fair notice"; specifically, the "'claimed novelty of this prosecution does not help [the defendants' fair notice argument], for it is immaterial that there is no litigated fact pattern precisely on point.'" *Id.* (quoting *United States v. Kinzler*, 55 F.3d 70, 74 (2d Cir. 1995)). Likewise here, the claimed novelty of a prosecution of employers for conspiring to allocate employees does not show a lack of fair notice given the prior decisions condemning conspiracies among competitors to allocate customers or other input suppliers, including via nonsolicitation agreements, and prior decisions making clear that "employees are no less entitled to the protection of the Sherman Act than are consumers." *Id.* at 12-13 (citing *Anderson*, 272 U.S. at 364–65). "Rather, the lack of criminal judicial decisions only indicates Defendants' unlucky status as [among] the first [defendants] that the Government has prosecuted for this type of conduct before." *Id.*

Lastly, the district court in *Jindal* rejected the argument that the *per se* rule presumes an element of the offense and thus violates the Sixth Amendment. Ex. A at 24. At the hearing in this matter on Defendants' motion to dismiss, Defendants raised the specter of just such a violation, although it was not raised in their written motion or reply and thus should not be considered. Regardless, the district court in *Jindal* recognized that every court of appeals to consider the argument has rejected it, *id.* at 24-25 & n.5 (citing cases). "Neither a conclusive nor a permissive presumption is at issue" for *per se* unlawful conspiracies. *Id.* at 24 (quoting *United States v. Cargo Serv. Stations, Inc.*, 657 F.2d 676, 683 n.7 (5th Cir. 1981)).

5

DATED: November 30, 2021  Respectfully submitted,

*s/ William J. Vigen*
William J. Vigen, Trial Attorney
James J. Fredricks, Chief
Megan S. Lewis, Assistant Chief
Anthony W. Mariano, Trial Attorney
Sara M. Clingan, Trial Attorney
U.S. Department of Justice, Antitrust Division
Washington Criminal II Section
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: 202-353-2411 / 202-307-1403 / 202-598-8145 / 202-598-2737 / 202-480-1951
FAX: 202-514-9082
E-mail: william.vigen@usdoj.gov / james.fredricks@usdoj.gov / megan.lewis@usdoj.gov / anthony.mariano@usdoj.gov / sara.clingan2@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on November 30, 2021, I filed this document with the Clerk of the Court using CM/ECF, which will serve this document on all counsel of record.

*s/ William J. Vigen*
William J. Vigen