**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 21-cr-0229-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

    1.  DAVITA INC.,

    2.  KENT THIRY,

        Defendants.

---

**DEFENDANTS' JOINT RESPONSE TO
THE GOVERNMENT'S NOTICE OF ADDITIONAL AUTHORITY**

---

The government cites *United States v. Jindal*, No. 4:20-cr-00358 (E.D. Tex. Nov. 29, 2021), Dkt. 56 ("Op."), as additional authority.  *See* Dkt. 91 ("Notice").  Defendants agree with the government's *procedural* point: *Jindal* confirms that whether the *per se* rule applies to the alleged agreements here is a question of law the Court should resolve now, and that if the Court concludes that the *per se* rule does not apply, it must dismiss the Indictment.  *See* Notice 1-2; Op. 7-8.  Substantively, however, *Jindal* does not support the government's opposition.

*Jindal* involves an alleged conspiracy to fix wages that, if proved at trial, would undoubtedly constitute price fixing, a *per se* violation.  Unlike here, the *Jindal* indictment contained factual allegations showing that the agreement at issue fit a *per se* category, namely, that the defendants expressly agreed to "lower[] the pay rates" of the workers (to a specific amount).  Op. 2-3; *see* Op. 11-12.  "The core" of defendants' argument was that the indictment

1

did not allege a price-fixing agreement because "wages" are not "prices." Op. 8. That argument

could not be taken seriously. As the court correctly explained, nothing in antitrust law or

economics supports the notion that the price of labor is not a price for antitrust purposes. In fact,

as the court observed, Op. 11-14, 21, "decades of precedent" recognize that wages *are* prices, *see*

*Anderson v. Shipowners' Ass'n of Pac. Coast*, 272 U.S. 359, 361-362 (1926)), and accordingly

that "wage-fixing conspiracies … are illegal *per se*" price-fixing agreements, *see, e.g.*, *National*

*Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2157 (2021) (observing agreement capping

athletes' wages would be *per se* illegal but for unique dynamics of sports leagues); *Law v.*

*National Coll. Athletic Ass'n*, 134 F.3d 1010, 1017 (10th Cir. 1998).

Thus, the challenge presented in *Jindal*—which concerned the claimed semantic

difference between "prices" and "wages"—is fundamentally different than the challenge here.

Defendants here raise a substantive legal issue: that agreements not to solicit employees do not

actually *allocate* markets, and that no matter how the agreements alleged here are labeled, the

facts stated in the Indictment do not describe the *allocation* of a market. As defendants have

explained (Mot. 6-7), "[t]he essence of a market allocation violation … is that competitors

apportion the market among themselves and cease competing in another's territory or for

another's customers." *Midwest Underground Storage, Inc. v. Porter*, 717 F.2d 493, 497 n.2

(10th Cir. 1983). That is, an allocation agreement *assigns* customers—or employees—to a

particular competitor, precluding the assigned customer or employee from switching to the other

competitor and the conspirators from competing for each other's customers or employees. *See,*

*e.g.*, *Anderson*, 272 U.S. at 361-362; *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 472,

476 (10th Cir. 1990). That is not what the Indictment alleges. As the government

acknowledged, the alleged agreements permitted employees to switch employers, and employees did. *See* Indictment ¶¶ 11(d)-(e), 19(d)-(e), 27(b)-(d); Tr. 29. Further, the notice requirement *reinforces* that the alleged agreements did not allocate a market: once an employee provided notice of a desire to leave, employers could compete for and hire the employee. *See* Indictment ¶¶ 11(d)-(e), 19(d)-(e), 27(e)-(f). The alleged agreements merely barred "cold call[ing]" each other's employees. Tr. 29.

The government's argument for deeming the alleged agreement "market allocation" is that it entailed agreement "not to compete." Notice 3 ("Defendants agreed with their horizontal competitor not to compete over employees, thereby allocating the current employees to their current employer."). This was the theory advanced by the government at oral argument: "the indictment alleges a classic *per se* market allocation agreement, a naked agreement amongst competitors at the same level of the market structure who have agreed not to compete with each other in some way in that market." Tr. 27; *see also* Tr. 29, 37-38, 40, 44, 53. At the hearing, counsel for defendants pointed out the fatal flaw in the government's theory: *all* horizontal agreements involve non-competition in some way, and thus that feature alone cannot be the basis for antitrust liability, let alone *per se* liability. Tr. 63-64. Here, as just explained, the alleged agreements still allowed a substantial amount of competition but merely barred solicitation without notice. The Court agreed that non-competition in some respect would not suffice to qualify the alleged agreements for *per se* treatment but gave the government the benefit of the doubt that it was presenting a more robust theory of liability. Tr. 64. The Court's charity was misplaced. The Notice shows that the government's basis for claiming that the alleged no-solicit agreements are *per se* illegal market-allocation agreements is nothing more than that the

3

agreements involve some form of non-competition.

The government emphasizes *Jindal*'s statement that "'the Supreme Court has made clear that the Sherman Act applies equally to … employers in the labor market.'"  Notice 2 (quoting Op. 10).  No one disputes that.  Rather, defendants have shown that it is hardly clear that a no-solicit agreement in any context is *per se* illegal; no court has ever found an employee no-solicit agreement illegal.  Even in goods markets the government has identified only a single case finding a no-solicit agreement illegal, *see United States v. Cooperative Theatres of Ohio, Inc.*, 845 F.2d 1367 (6th Cir. 1988), and the defendants there completely "failed to articulate any potentially pro-competitive justification for the agreement," *id.* at 1369.  Moreover, defendants argue that courts must account for the dynamics of the business context—not to create an antitrust exemption but to determine whether *per se* treatment is appropriate—and therefore does not automatically follow that *employee* no-solicit agreements are also *per se* illegal, given the materially different dynamics in labor markets.  *See* Reply 5-7.  Drawing on *Jindal*, the government renews its argument that "possible procompetitive benefits" stemming from those dynamics are "of no consequence."  Notice 3.  But as *Jindal* said, that is true only "where the per se rule applies."  Op. 16.  Here, the question is *whether* the *per se* rule applies.  *See* Reply 8.

The government also cites *Jindal* for its argument that it does not matter that this case is admittedly part of the first group of cases the government has "prosecuted for this type of offense."  Notice 2; *see* Tr. 33.  That is irrelevant.  What is relevant is that there are *no cases*—criminal or civil—finding employee no-solicit agreements illegal.  That contrasts sharply with *Jindal*, which, again, noted that there was ample precedent finding wage fixing illegal.  Searching for support, the government argues that no-solicit agreements are "tantamount" to no-

4

hire agreements, quoting *Jindal*'s quotation from *Catalano, Inc. v. Target Sales Inc.*, 446 U.S. 643, 648 (1980).  Notice 3.  The government misunderstands the meaning of "tantamount." Consistent with the dictionary definition of the word, *see* https://www.dictionary.com/browse/ tantamount, *Catalano* expressly used it to mean economically "equivalent."  446 U.S. at 648. *Jindal* did the same.  Op. 16.  But as defendants explained, the competitive consequences of no-hire agreements and no-solicit agreements (with or without a notice requirement like that alleged here) are not equivalent.  *See* Reply 3.  In any event, it is far from settled that no-*hire* agreements are subject to a *per se* rule.  *See id.* at 4-5.

The *Jindal* court also collected precedents applying the *per se* rule against price-fixing agreements to agreements using different mechanisms to do so, including agreements "establishing minimum prices," "fixing credit terms," and "setting fee schedules."  Op. 8-10. That analysis does not help the government.  Those precedents do *not* hold that an agreement is *per se* illegal whenever a plaintiff or prosecutor attaches a *per se* label to it or deems it *similar* to an established *per se* category, but rather, that an agreement is deemed *per se* illegal *only if* the agreement *actually* fixes prices.  Again, the fundamental defect in the Indictment here is that its factual statements *contradict* the "allocat[ion]" label the government wishes to apply.

Finally, the government's reliance on *Jindal*'s due process analysis fails for the same reasons.  Notice 4-5.  As the district court recounted, many courts had held wage-fixing *per se* illegal, and wages are indisputably prices.  Thus, the court explained, its ruling was not "novel" in the least.  Op. 20-21.  Further, contrary to the government's mischaracterization, defendants' argument is not that there is no *criminal* precedent finding employee no-solicit agreements to be illegal or market allocative; it is that there is *no precedent* to that effect, period.

December 2, 2021

SETH P. WAXMAN
DAVID M. LEHN
WILMER CUTLER PICKERING HALE &
DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
seth.waxman@wilmerhale.com

JOHN C. DODDS
ERICA A. JAFFE
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-4942
john.dodds@morganlewis.com

Respectfully submitted,

 *s/ John F. Walsh III*
JOHN F. WALSH III
WILMER CUTLER PICKERING HALE & DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80220
(720) 274-3154
john.walsh@wilmerhale.com

DANIEL CRUMP
WILMER CUTLER PICKERING HALE & DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
(213) 443-5300
daniel.crump@wilmerhale.com

J. CLAY EVERETT, JR.
TRACEY MILICH
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
(202) 739-5860
clay.everett@morganlewis.com

*Counsel for Defendant DaVita Inc.*

CLIFFORD B. STRICKLIN
KING & SPALDING
1401 Lawrence Street, Suite 1900
Denver, CO 80202
(720) 535-2327
cstricklin@kslaw.com

JUSTIN P. MURPHY
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001-1531
(202) 756-8018
jmurphy@mwe.com

JEFFREY E. STONE
DANIEL CAMPBELL
McDermott Will & Emery LLP
444 W Lake St.
Chicago, IL 60606
(312) 984-2064
jstone@mwe.com

THOMAS M. MELSHEIMER
WINSTON & STRAWN LLP
2121 N. Pearl St, Suite 900
Dallas, TX 75201
(214) 453-6401
tmelsheimer@winston.com

*Counsel for Defendant Kent Thiry*

6

CERTIFICATE OF SERVICE

I certify that on December 2, 2021, I filed the above document with the Clerk of the

Court using CM/ECF, which will send electronic notification thereof to all registered counsel.

_s/ John F. Walsh III_____
John F. Walsh III