IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-0229-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. DAVITA INC.,

2. KENT THIRY,

        Defendants.

_____

**DEFENDANTS' JOINT MOTION *IN LIMINE* TO PRECLUDE THE DIVISION
FROM CHARACTERIZING THE ALLEGED CONSPIRACIES
AS ANYTHING OTHER THAN AGREEMENTS TO "ALLOCATE" EMPLOYEES BY "NOT
SOLICITING" THEM, AS CHARGED IN THE SUPERSEDING INDICTMENT**
_____

Defendants move *in limine* to preclude the Antitrust Division of the Department of Justice (the "Division") from characterizing the alleged conspiracies in this case as anything other than agreements to "allocate" employees by "not soliciting" them, as charged in the Superseding Indictment.

## BACKGROUND

The Superseding Indictment charges defendants with conspiracies to restrain trade in violation of Section 1 of the Sherman Act. The Division bases those charges on a single theory of liability: that defendants allegedly "conspir[ed]" by entering into "agreement[s]" to "allocate . . . employees by not soliciting" certain employees of specific companies. Dkt. No. 74 ¶ 10 (defendants allegedly agreed with SCA to "allocate senior-level employees by *not soliciting* each other's senior-level employees") (emphasis added); *see also id*. ¶ 18 (defendants allegedly

1

agreed with Company B to "allocate employees by Company B's *not soliciting* DAVITA's employees.") (emphasis added); *id*. ¶ 26 (defendants allegedly agreed with Company C to "allocate employees by Company C's *not soliciting* DAVITA's employees.") (emphasis added).

Other theories of liability are absent from the Superseding Indictment. For example, nowhere does the charging document allege defendants entered into "no-hire," "no-poach," or "no-solicit-without-notice" agreements. *See id*. ¶¶ 10, 18, 26.[1]

## LEGAL STANDARD

Evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, is inadmissible. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

In addition, the Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Under Rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair

---

[1] The word "hire" does not appear in the Superseding Indictment. The word "poaching" appears a single time—as part of a quotation from an email written by an unnamed SCA employee that purportedly illustrates how the DaVita/SCA co-conspirators "alerted" each other "about instances of recruitment," *id*. ¶ 11(f), *i.e.*, not describing the terms or object of the agreement. Likewise, the Superseding Indictment alleges that the co-conspirators used "notice" to "monitor[] compliance" with the agreement, but not that "notice" was an agreed upon term of any charged conspiracy. *See, e.g., id*. ¶ 11(d) (co-conspirators "monitored compliance with the agreement not to solicit employees by requiring senior-level employees of DAVITA and SCA who applied to the other company to notify their current employer that they were seeking other employment in order for their applications to be considered").

2

prejudice. *See United States v. Record*, 873 F.2d 1363, 1375 (10th Cir. 1989). For the purposes of Rule 403, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The Court "has not only the discretion but also the duty to exclude evidence of little or no relevance or probative value which might have a prejudicial effect." *Sec. State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971).

## ARGUMENT

The Superseding Indictment is clear: defendants were charged with entering into three agreements to "allocate employees" by "not soliciting" employees. Any references to, or assertions of uncharged theories of liability—such as references to "no-hire," "no-poach," or "no-solicit-without-notice" agreements—should be excluded because they are irrelevant, and would severely prejudice defendants and unduly confuse the jury.

### I. REFERENCES TO UNCHARGED THEORIES OF LIABILITY ARE IRRELEVANT

The Division advances one theory of liability: that defendants agreed to "allocate employees" "by not soliciting" employees from certain companies. Dkt. No. 74 ¶¶ 10, 18, 26. Because "relevance turns on whether [the evidence] can support a theory of liability," *Barr v. City of Albuquerque*, No. 12-cv-01109, 2014 WL 11497834, at *5 (D.N.M. Oct. 24, 2014), references to uncharged theories of liability are irrelevant and the Division should not be permitted to characterize the alleged conspiracy as anything other than agreements to allocate employees by not soliciting employees.

3

The charges in the Superseding Indictment do not contend that defendants conspired by agreeing not to hire, not to hire without notice, not to interview without notice, or not to poach employees. *See* Dkt. No. 74 ¶¶ 9-10, 17-18, 25-26. Nor are these equivalent to an agreement not to solicit. *See Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17-cv-205-MMA, 2020 WL 2553181, at *13 (S.D. Cal. May 20, 2020) (explaining that a "non-solicitation agreement is not synonymous with a no-poaching agreement" or a no-hiring agreement). Indeed, the Division has acknowledged that the employers were free to hire each other's employees, that employees were free to move back and forth among the alleged coconspirators, and that management-level employees in fact moved between these employers. *See, e.g.*, 11/19/21 Mot. Dismiss Hr'g Tr. 29 (when asked by the Court if it was aware that a "number of management level or lower-level employees have, in fact, despite this agreement moved," the Division responded, "[t]here are examples that we are aware of where that did happen."). Accordingly, any reference to uncharged theories of liability—including no-hire, no-hire-without-notice, no-interview-without-notice, or no-poach agreements—would be irrelevant to the charged conspiracies and should be excluded. *See, e.g.*, *United States v. Rucker*, 188 F. App'x 772, 779 (10th Cir. 2006) (evidence unrelated to a "particular count in the indictment" was irrelevant and inadmissible); *Griffeth v. United States*, No. 1:13-cv-00019-TC, 2014 WL 6930056, at *2 (D. Utah Dec. 8, 2014), *aff'd*, 672 F. App'x 806 (10th Cir. 2016) (excluding as "irrelevant" "facts and arguments" relating to legal theory not in the complaint); *Sec. State Bank*, 439 F.2d at 913 (excluding deposition testimony that was not "connected" to legal theories at issue as "irrelevant and immaterial"); *Rheinfrank v. Abbott Lab's, Inc.*, No. 1:13-cv-144, 2015 WL 5258858, at *6 (S.D. Ohio Sept. 10, 2015) ("evidence and argument" relating to a preempted claim was "irrelevant" and

4

"inadmissible"); *Salomon v. Andrea C.*, No. 06-cv-484, 2008 WL 686795, at *4 (S.D. Cal. Mar. 11, 2008) (precluding plaintiff from arguing that his job was "inherently dangerous" or introducing a "theory of liability" different from the one asserted in the complaint).

## II. REFERENCES TO UNCHARGED THEORIES OF LIABILITY ARE HIGHLY PREJUDICIAL

In addition to being irrelevant, allowing the Division to characterize the alleged conspiracies as anything other than "agreement[s]" to "allocate employees" "by not soliciting" employees, Dkt. No. 74 ¶¶ 10, 18, 26, would result in "unfair prejudice" that would "substantially outweigh[]" any probative value. Fed. R. Evid. 403. Indeed, permitting the Division to mischaracterize the charged agreements with buzzwords such as "no-poach" would not be probative of whether the charged agreements existed—it would be derogatory and inflammatory.[2] *See, e.g.*, *Miller UK Ltd. v. Caterpillar, Inc.*, No. 10-cv-03770, 2015 WL 7351674, at *10 (N.D. Ill. Nov. 20, 2015) (granting motion to preclude mention of "tax haven" because the term "has negative connotations that would unduly prejudice" defendant and "[t]his prejudice outweighs any probative value"); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. 12-cv-00329, 2014 WL 8096334, at *8 (C.D. Cal. Apr. 21, 2014) (granting motion to preclude use of terms "knock-off," "pirated," or "predatory" because "[t]here is no probative value in the use of a term with negative connotations to describe Defendant's products or pricing strategy, and the use of the pejorative terms . . . are therefore unduly prejudicial under FRE 403"); *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-cv-158-JRG, 2012 WL 12906091, at *2

---

[2] The Division's use of buzzwords is not a hypothetical concern. Terms like "no-poach" regularly appear in witness interview notes produced by the Division in discovery in this case.

5

(E.D. Tex. May 24, 2012) (granting motion to preclude use of "derogatory terms including but not limited to 'paper patent,' 'shell corporation,' 'patent troll,' 'pirates,' 'playing the lawsuit lottery,' and 'corporate shell game'"). It would also "confus[e] the issues" and "mislead[] the jury," Fed. R. Evid. 403, as the key issues at trial would be muddied and defendants would have to rebut vague and undefined legal and factual claims not presented to the grand jury, let alone charged. *See Rheinfrank*, 2015 WL 5258858, at *5 (precluding references to marketing activities not in complaint because it would "prejudic[ial], confus[e] the issues, mislead[] the jury, [cause] undue delay, and wast[e] time").

Allowing the Division to refer to the charged conspiracies as "no-solicitation without notice" agreements would be particularly prejudicial. Defendants were charged with agreements to allocate employees "by not soliciting" employees (or agreements "not to solicit" or "not solicit"), and the word "notice" does not appear in the relevant charging portions of the Superseding Indictment. *See* Dkt. No. 74 ¶¶ 9-10, 17-18, 25-26. Instead, the Superseding Indictment alleges that defendants "*monitored compliance*" with the charged "*agreement not to solicit*" by requiring employees "to notify their current employer that they were seeking" employment elsewhere before they could be considered by the other employer. *Id*. ¶ 11(d) (emphasis added); *see also id*. ¶¶ 19(d), 27(e). The Court should require the Division to adhere to the Superseding Indictment's allegations by referring to the notice element in this case only as an enforcement mechanism for the non-solicitation agreement actually charged. *See Hunter v. State of N.M.*, 916 F.2d 595, 598 (10th Cir. 1990). Any other approach would effectively amend the charges in the indictment, would severely prejudice defendants and would confuse the jurors.

Critically, if the Division references (or asserts) uncharged theories of liability—including no-hire, no-poach, or no-solicitation-without-notice agreements—there is a substantial danger that the jury would rely on those references to "declar[e] guilt on a ground different from proof specific to the offense charged," a quintessential "unfair prejudice" to criminal defendants. *Old Chief*, 519 U.S. at 180-81. The Division must instead prove beyond a reasonable doubt that Defendants engaged in the specific violations charged in the Superseding Indictment—that is, alleged agreements to "allocate employees" by "not soliciting" employees. *See Hunter*, 916 F.2d at 598; *see also United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir. 1990).

## CONCLUSION

For the foregoing reasons, the Court should preclude the Division from characterizing the alleged conspiracies in this case as anything other than agreements to "allocate employees" by "not soliciting" employees.

| | |
|---|---|
| December 17, 2021 | Respectfully submitted, |
| CLIFF STRICKLIN<br>KING & SPALDING<br>1401 Lawrence Street, Suite 1900<br>Denver, CO 80202<br>(720) 535-2327<br>cstricklin@kslaw.com | /s/ John F. Walsh III<br>JOHN F. WALSH III<br>WILMER CUTLER PICKERING HALE & DORR LLP<br>1225 17th Street, Suite 2600<br>Denver, CO 80220<br>(720) 274-3154<br>john.walsh@wilmerhale.com |
| JEFFREY STONE<br>DANIEL CAMPBELL<br>McDermott Will & Emery LLP<br>444 W Lake St.<br>Chicago, IL 60606<br>(312) 984-2064<br>jstone@mwe.com | JOHN C. DODDS<br>MORGAN LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103-2921<br>(215) 963-4942<br>john.dodds@morganlewis.com |
| JUSTIN P. MURPHY<br>McDermott Will & Emery LLP<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>(202) 756-8018<br>jmurphy@mwe.com | *Counsel for Defendant DaVita Inc.* |

*Counsel for Defendant Kent Thiry*

### CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a), Defendants Thiry and DaVita conferred with counsel for the United States by telephone on December 14, 2021, regarding this motion, and the United States opposes this motion.

### CERTIFICATE OF SERVICE

I certify that on December 17, 2021, I filed the above document with the Clerk of the Court using CM/ECF, which will send electronic notification thereof to all registered counsel.

*/s/ John F. Walsh III*
John F. Walsh III
