**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 21-cr-0229-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

    1. DAVITA INC.,
    2. KENT THIRY,

        Defendants.

_____

**DEFENDANTS' JOINT OPPOSITION
TO THE DIVISION'S OMNIBUS MOTIONS IN LIMINE**
_____

        The Antitrust Division of the Department of Justice (the "Division") moves to exclude six categories of evidence, each of which is directly relevant to elements of the charged offense and creates no risk of unfair prejudice. Dkt. 107. The Division's proposed exclusions are particularly unreasonable here, as the Division seeks to impose formalistic restrictions on the evidence that can be used to defend against this first-of-its-kind criminal prosecution.

        The Division's effort to hamstring the defense rests on two fundamentally flawed assumptions: (1) that this Court has already denied the motion to dismiss and conclusively determined this is a *per se* case, and (2) that the evidence the Division seeks to exclude would be inadmissible in a *per se* case. Both assumptions are incorrect. The challenged evidence is probative of whether an agreement to allocate markets in restraint of trade existed, and whether defendants intended to enter into such an agreement knowing of its unlawful purpose. The Division is asking this Court to exclude relevant evidence that goes to two of the most hotly contested elements of the offense. The Court should deny this motion.

1

## LEGAL STANDARD

### I. Admissibility of Relevant Evidence

Relevant evidence is generally admissible. Fed. R. Evid. 402. "In weighing the factors under Rule 403, the court should generally give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *SEC v. Peters*, 978 F.2d 1162, 1171 (10th Cir. 1992) (quotation omitted) (exclusion is an "extraordinary remedy"); *see also Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997) ("the state may not arbitrarily deny a defendant the ability to present testimony that is relevant and material and vital to the defense"). Courts give defendants particularly wide latitude to present evidence of intent. *See Vinieris v. Byzantine Mar. Corp.*, 731 F.2d 1061, 1064 (2d Cir. 1984) ("No evidence which bore even remotely on [intent] should have been kept from the jury, unless it interjected tangential and confusing elements which clearly outweighed its relevancy."); *U.S. v. Foshee*, 578 F.2d 629, 632 (5th Cir. 1978) ("[C]ircumstantial evidence must be introduced to allow the jury to infer intent. Consequently, courts are given considerable leeway in determining what evidence is admissible.").

### II. Elements of the Offense

Defendants are charged with three counts of conspiracy to "allocate" employee markets in violation of Section 1 of the Sherman Act. *See* Super. Indict. ¶¶ 10, 18, 26. The Court has yet to rule on defendants' motion to dismiss based on the failure of the indictment to charge a *per se* violation of that Act. But even if the Court denies defendants' motion to dismiss and ultimately concludes that the *per se* standard applies, the evidence at issue here is still admissible. Even

under the most restrictive possible set of jury instructions, the Division will still need to prove the following elements beyond a reasonable doubt:

> *First:* that the charged . . . conspiracy existed at or about the times alleged [and]
>
> *Second*: that the defendant knowingly—that is, voluntarily and intentionally— became a member of the conspiracy charged in the indictment, knowing of its goal and intending to help accomplish it[.]

Final Jury Instructions, *U.S. v. Penn*, No. 1:20-cr-00152, Dkt. 921 at 16 (D. Colo. Dec. 16, 2021); *see also id.* at 19 ("conspiracy" is an "agreement" to act "for some unlawful purpose or to achieve a lawful purpose by unlawful means").[1]

The Supreme Court has made clear that a broad array of intent and effect evidence is admissible in antitrust cases governed by the *per se* standard. *U.S. v. U.S. Gypsum Co.*, 438 U.S. 422 (1978). The Division's assertion that "the crime is the agreement, and questions of intent (beyond the intent to conspire) and effect are irrelevant" (Mot. 2) suggests a rigid, narrow approach that is legally incorrect and would result in reversible error if actually applied, particularly in a criminal case. Instead, the Court has declared that it is "unwilling to construe the Sherman Act as mandating a regime of strict-liability criminal offenses." *U.S. Gypsum Co.*, 438 U.S. at 436. Thus, it held that "a defendant's state of mind or intent is an element of a criminal antitrust offense which must be established by evidence and inferences drawn therefrom and cannot be taken from the trier of fact through reliance on a legal presumption of wrongful intent." *Id*. at 435. It elaborated: "In a conspiracy, two different types of intent are generally required—the basic intent to agree, which is necessary to establish the existence of the

---

[1] As this is a novel case, defendants anticipate filing proposed jury instructions that would require the Division to prove additional elements. Regardless, the evidence the Division attempts to exclude here is admissible under any set of elements and instructions.

conspiracy, and the more traditional intent to effectuate the object of the conspiracy." *Id*. at 443 n.20.

The Division must prove "that the defendant knowingly—that is, voluntarily and *intentionally*—became a member of the conspiracy charged in the indictment, *knowing of its goal and intending to help accomplish it*." Final Jury Instructions, *Penn*, No. 1:20-cr-00152, Dkt. 921 at 16 (emphasis added); *see also id*. at 25 ("[T]he evidence must establish that the defendant knowingly joined the conspiracy with the intent to advance the objective of the conspiracy"); *Shell v. Am. Fam. Rts. Ass'n*, No. 09-cv-00309, 2010 WL 1348548, at *11 (D. Colo. Mar. 31, 2010) (that "defendants knowingly entered into the conspiracy" or that "defendants conspired to commit multiple wrongs" is "not sufficient to make a . . . showing as to a meeting of the minds regarding the object of the conspiracy."); *Registered Physical Therapists v. Intermountain Health Care*, No. 86-cv-0076J, 1988 WL 125788, at *6 (D. Utah Sept. 6, 1988) (holding that while there was a "conspiracy" to "limit[] the plaintiffs' access to a needed supply," the "object of the conspiracy was to keep the plaintiffs out of [defendants'] building," not to "direct[ly] restrain[] . . . competition"); *C.H. (Skeet) Smith Trucking Co. v. Bill Hodges Trucking Co.*, 671 F. Supp. 1329, 1336 (W.D. Okla. 1987) ("Plaintiff must show (1) that a conspiracy existed, and (2) that the object of the conspiracy was to conduct activity" in violation of the Sherman Act.). Defendants must be permitted to offer any evidence "which bear[s] even remotely" on whether they had this criminal intent. *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir 1952).

And, while anticompetitive effect is not itself an element of a *per se* Sherman Act offense, the Supreme Court has held that effect evidence is probative of two elements of the

4

offense: the existence of an agreement and state of mind for the intent element. First, the Court has explained that a market effect (or a lack of effect) is probative of whether the charged conspiracy (*i.e.*, an agreement) existed in the first place. *See Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 592 (1986) ("The alleged conspiracy's failure to achieve its ends in the two decades of its asserted operation is strong evidence that the conspiracy does not in fact exist").[2] Second, the Court has explained that effect evidence is probative of a defendant's state of mind—that is, whether the defendant *intentionally* joined an antitrust conspiracy, the second element noted above. *See U.S. Gypsum Co.*, 438 U.S. at 446 ("it would be correct to instruct the jury that it may infer intent from an effect on prices"). As such, effect evidence has "a tendency to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401, and courts routinely admit such evidence in criminal antitrust trials. *See, e.g.*, *U.S. v. Penn*, No. 1:20-cr-00152, Dkt. 649 at 7 (D. Colo. Oct. 15, 2021) (admitting effect evidence "as part of [the defendants'] theory that there was no agreement among them to fix prices in the first place.").[3]

## ARGUMENT

### I. The Court Should Deny the Division's Motion to Exclude Effects Evidence

In its first motion *in limine*, the Division seeks to exclude evidence and argument that the

---

[2] *See also Am. Tobacco Co. v. U.S.*, 328 U.S. 781, 804 (1946) (evidence of "price changes is circumstantial evidence of the existence of a [price-fixing] conspiracy").

[3] *See also U.S. v. Aiyer*, 470 F. Supp. 3d 383, 414 (S.D.N.Y. 2020) (admitting effect evidence "for the limited and permissible purpose of showing that the defendant or one of his alleged coconspirators lacked the specific intent to engage in the conduct that comprised the object of the conspiracy, namely fixing prices and rigging bids."); *U.S. v. Usher*, No. 17-cr-0019, Dkt. 158 at 33 (S.D.N.Y. Sept. 28, 2018) (denying motion to exclude circumstantial evidence of intent in *per se* price fixing case in order not "to infringe on the defense['s] . . . ability to rebut the elements of the crime with which each defendant is charged.").

alleged conspiracy was "justified by procompetitive or other reasons" or "did not result in harmful effects." Mot. 4. As a threshold matter, and as argued by defendants in their motion to dismiss, this case should be governed by the rule of reason. As of this filing, the Court has yet to decide that motion, or if this case will even proceed under a *per se* rule. Should the Court find that it needs to defer that decision until it hears evidence at trial, then effects evidence must be admitted at trial to inform the Court's decision regarding whether a *per se* rule applies.

Even in the event this case goes to trial under the most restrictive *per se* standard, evidence that the conduct at issue had a procompetitive effect or lacked an anticompetitive effect is relevant to two elements of the offense: the existence of an allocation agreement and the defendants' intent to enter into such an agreement. For these reasons, the Court should deny the Division's first motion in its entirety.

### A. Evidence of Procompetitive Effect and Lack of Anticompetitive Effect Is Admissible to Disprove the Agreement and Intent Elements

Courts routinely permit defendants to introduce evidence of procompetitive effects or a lack of harmful effects in *per se* cases to negate two elements of the offense: the existence of a *per se* unlawful agreement, and that the defendants knowingly entered such an agreement.

Notably, in *U.S. v. Penn*, a *per se* price fixing case that recently went to trial in this District, the defendants proposed expert testimony that the economic outcomes of the chicken sales at issue were "not consistent with those that economists would expect to find in the presence of a price fixing or bid-rigging agreement." *Penn*, No. 1:20-cr-00152, Dkt. 362 at 5 (D. Colo. Aug. 16, 2021). The Division acknowledged that "[s]uccess of the conspiracy," while "not an element of the crime," is "perhaps relevant to the existence of an agreement," but nevertheless moved to exclude this effect evidence as improper in a price fixing case governed by the *per se*

6

rule. *Penn*, No. 1:20-cr-00152, Dkt. 299 (D. Colo. July 26, 2021). The court rejected the Division's argument, holding that the defendants could introduce economic evidence of procompetitive effects and the absence of harmful effects "as part of their theory that there was no agreement among them to fix prices in the first place."[4] *Penn*, No. 1:20-cr-00152, Dkt. 649 at 7 (D. Colo. Oct. 15, 2021); *see also Matsushita Elec.*, 475 U.S. at 592 ("The alleged conspiracy's failure to achieve its ends in the two decades of its asserted operation is strong evidence that the conspiracy does not in fact exist."); *Cont'l Baking Co. v. U.S.*, 281 F.2d 137, 141, 145 (6th Cir. 1960) (defendants entitled to introduce "explanatory economic evidence" of "factors affecting price changes" to disprove existence of *per se* price-fixing agreement). This Court should deny the Division's motion on the same basis here.

      The Division also filed a separate motion in *Penn* to exclude evidence and argument that the alleged conspiracy had procompetitive or other justifications or did not result in harmful effects—essentially a carbon copy of the instant motion. *Penn*, No. 1:20-cr-00152, Dkt. 567 (D. Colo. Oct. 5, 2021). The *Penn* court held that while the defendants would be precluded from arguing that the alleged agreement was *justifiable* because it either did not cause economic harm or increased competition, the defendants were not precluded "from introducing evidence that the prices were not fixed as a result of an agreement or from introducing evidence that a lack of harm suggests that defendants did not have an agreement to fix prices." *Penn*, No. 1:20-cr-00152, Dkt. 642 at 2 (D. Colo. Oct. 14, 2021).

      *Penn* is consistent with other recent criminal antitrust cases. For example, in *U.S. v.*

---

[4] The Division's motion does not refer to the *Penn* decisions, much less provide any reason why this Court should deviate from their reasoning.

*Aiyer*, defendant sought to introduce expert testimony in a *per se* price fixing and bid rigging case demonstrating that the foreign exchange trading at issue had "procompetitive effects or lacked anticompetitive effects." 470 F. Supp. 3d 383, 414 (S.D.N.Y. 2020). The Division moved to exclude this evidence, arguing that the "[d]efendant may not defend the conspiracy through procompetitive justifications or lack of anticompetitive effect." *U.S. v. Aiyer*, No. 1:18-cr-00333, Dkt. 93 at 25 (S.D.N.Y. July 26, 2019). The court rejected the Division's arguments and permitted the defendant to introduce it "for the limited . . . purpose of showing that the defendant or one of his alleged coconspirators lacked the specific intent to engage in the conduct that comprised the object of the conspiracy, namely fixing prices and rigging bids." *Aiyer*, 470 F. Supp. 3d at 414.

### B. The Effect Evidence Should Be Admitted In This Case

Evidence of procompetitive effects or lack of harmful effects is relevant to whether an agreement existed to allocate employees and whether defendants knowingly, voluntarily, and intentionally entered into such an agreement. For example, defendants' expert, Dr. Pierre-Yves Cremieux, will testify (among other things) that DaVita's separation rates for the relevant sets of DaVita employees were not depressed during the alleged conspiracy periods. Defendants also expect to introduce evidence that employees could and did move between DaVita and Surgical Care Affiliates, Company B, and Company C during the relevant period. Contrary to the Division's assertion that this evidence amounts to a "'no harm, no foul' defense," Mot. 7, the fact that employees could and did leave DaVita for other employers, including Surgical Care Affiliates, Company B, and Company C (i.e., the absence of the anticompetitive effects one would expect from an employee market allocation agreement) makes it "less probable" that

8

employee market allocation agreements existed in the first place, and that defendants intended to enter into such agreements. Fed. R. Evid. 401(a).

Likewise, Dr. Cremieux is expected to testify that, during the alleged conspiracy periods, the compensation for DaVita senior-level employees was not depressed relative to national benchmarks; in fact, the median salary for DaVita senior-level employees exceeded national benchmarks during the alleged conspiracy periods by a greater amount before or after the alleged conspiracies. And defendants anticipate introducing evidence that employees at DaVita who provided notice that they were considering positions outside of DaVita often received offers from DaVita of promotions, increased compensation, and enhanced job responsibilities. Again, rather than an attempt to "justify their conspiracy" by showing "that competitors prohibited solicitation to benefit their employees, or that employees in fact benefited from the nonsolicitation agreements" (Mot. 6), this evidence makes it "less probable" that unlawful market allocation conspiracy existed in the first place, or that defendants knowingly joined one. Fed. R. Evid. 401(a).

Finally, the Division argues that "any marginal relevance" of the effect evidence "would be substantially outweighed by the likelihood the evidence would be unduly prejudicial, mislead the jury, and confuse the issues" such that it should be excluded under Rule 403. Mot. 6. This is a gross overextension of Rule 403. The Division never explains how this evidence would be prejudicial, misleading, or confusing other than the summary assertion that it might "urge the jury to acquit Defendants for reasons that are irrelevant to the elements of the charged offense." *Id.* at 5. That is mere sophistry. The Division cites no cases in which this type of relevant evidence was excluded under Rule 403 and offers no reason to believe the jury will simply

9

"ignore" this Court's instructions regarding this evidence. *Id.* at 6; *see U.S. v. Hamilton*, 587 F.3d 1199, 1219 (10th Cir. 2009) ("Jurors are presumed to follow the judge's instructions."). The Division has not carried its burden of showing any unfair prejudice that would substantially outweigh the probative value of this highly relevant evidence. The motion must be denied.

    **II.**       **The Court Should Deny the Division's Motion to Exclude "Good Intentions" Evidence**

In its second motion *in limine*, the Division seeks to exclude evidence of "procompetitive or good intentions, including a motivation to benefit employees," as irrelevant to a *per se* offense. Mot. 8. Defendants do not intend to argue that they should be acquitted because they acted in good faith or thought that their conduct was legal. However, defendants are entitled to introduce evidence relevant to the elements of the charged offense. As discussed above, evidence of a procompetitive effect is admissible to show the nonexistence of an antitrust agreement, as well as to show that the defendants did not knowingly, voluntarily, or intentionally enter into such an agreement. *See supra* 8-9. Thus, while the Division asserts that defendants should not be able to "claim they had good intentions in reaching the nonsolicitation agreements because . . . such agreements would facilitate greater investment in employees," Mot. 8-9, evidence that DaVita made greater investment in employees through higher compensation or better training (as well as any other evidence of procompetitive effects) is in fact relevant to the elements of the offense and should be admitted on that basis. *See supra* 8-9.

Finally, the Division's claim that even if relevant, this evidence would be "unduly prejudicial, mislead the jury, and confuse the issues" is left unexplained and should be rejected on that ground. *U.S. v. Apperson*, 441 F.3d 1162, 1204 (10th Cir. 2006) (summarily asserting Rule 403 is insufficient). To the extent there is concern about misleading or confusing the jury,

that can be resolved by instructing the jury that this evidence can only be considered in relation to whether the agreement and intent elements are satisfied.

### III.     The Court Should Deny the Division's Motion to Exclude "Good Character" Evidence

In its third motion *in limine*, the Division seeks to exclude evidence of defendants' "good character," including "reputation or opinion evidence that defendants are generous . . . patriotic, family-oriented, religious, community participants, or attentive to employee professional development," as well as "specific instances of conduct" such as "caring for family members, donations, provision of free or reduced-price healthcare services, attending religious services, performing charitable or civic work, other forms of generosity, or attentiveness to employee professional development," on the basis that "none of the above characteristics are relevant to the charged offenses." Mot. 9-10.

Defendants recognize that any character evidence must meet the requirements of Federal Rule of Evidence 404 and 405, including that a criminal defendant may only "offer evidence of the defendant's *pertinent* trait," Fed. R. Evid. 404(a)(2)(A) (emphasis added). These rules, however, do not provide a basis to exclude evidence that is relevant to an issue *other* than character. *See* Fed. R. Evid. 402 (relevant evidence is admissible unless otherwise prohibited). For example, the Division seeks to exclude evidence that defendants were "attentive to employee professional development," Mot. 10, which could sweep away evidence that is relevant to the essential questions of whether a market allocation agreement existed, or whether defendants intended to enter into such an agreement. *See supra* 3-5.

For these reasons, the Court should not declare that entire categories of character evidence are inadmissible. The Court should instead rule on the admissibility of character

evidence when it can be considered in context at trial with a more complete understanding of its probative value. *See Penn*, No. 1: 20-cr-00152, Dkt. 642 at 4, 5 (D. Colo. Oct. 14, 2021) (denying motion to exclude evidence that defendants were "generous, charitable, patriotic, family-oriented, religious, or community participants" because the Court was "unable to rule on the motion until a defendant attempts to present evidence of a character trait").

### IV. The Court Should Deny the Division's Motion to Exclude Penalties and Consequences Evidence

In its fourth motion *in limine*, the Division seeks to exclude evidence related to "potential penalties and consequences of a conviction," arguing that such evidence is irrelevant and would only promote jury nullification.[5] *See* Mot. 10. These arguments are premature and misguided.

Defendants will not offer evidence to "highlight[s] the sentences to which Defendants are exposed" (Mot. 11 n.2) in an effort to persuade the jury to acquit merely out of sympathy or lenity. Defendants are, however, entitled to present relevant evidence that vindicate their constitutional rights to present a defense, *see, e.g.*, *Davis v. Alaska*, 415 U.S. 308 (1974), and to cross-examine the witnesses against them, *see, e.g.*, *Holmes v. South Carolina*, 547 U.S. 319 (2006), including, as the Division concedes, to "explore on cross-examination the statutory maximum sentences" for the Division's cooperating witnesses because such evidence bears on their credibility. Mot. 11 n.2.

All evidence defendants will seek to introduce will bear on their defenses or the lack of credibility of the Division's witnesses, and as such must be admitted. *See U.S. v. Joseph*, 567 F.

---

[5] Specifically, the Division seeks to exclude "(a) the maximum penalties; (b) the collateral impact on Defendant DaVita's business, including the confidence and trust of its customers; (c) that Defendant Thiry could be incarcerated; (d) that Defendant Thiry would become a felon and could be prohibited from obtaining some types of jobs or lose certain rights; and (e) any mention of Defendant Thiry's family." Mot. 10-11.

App'x 844, 849 (11th Cir. 2014) (denying a defendant "of the opportunity to make all legally tenable arguments that are supported by the facts of the case" is reversible error) (quotations omitted). Given the breadth of evidence the Division seeks to exclude, it is impossible at this time to predict its relevance, and therefore its admissibility should be determined at trial. For these reasons, the motion should be denied.

### V. The Court Should Deny the Division's Motion to Exclude Evidence and Argument Regarding Its Charging Decisions

In its fifth motion *in limine*, the Division seeks to exclude evidence and argument regarding the Division's "charging decisions" on the ground that it would promote jury nullification. Mot. 12.

Defendants do not intend to pursue a "selective prosecution" defense or to seek jury nullification based on "evidence and argument claiming this prosecution is the first of its kind." However, defendants oppose the wholesale exclusion of "evidence and arguments" of the Division's "charging decisions." As the Division itself acknowledges, its charging decisions may be relevant in certain circumstances—for example, "charging decisions relating to cooperating witnesses" are admissible for "impeaching the credibility of each witness's testimony," and thus the Division does not seek to exclude evidence of charging decisions related to cooperating witnesses for impeachment purposes. *See* Mot. 13. Defendants cannot predict if or under what circumstances other charging decision-related evidence may be relevant or admissible at trial, especially because the term "charging decisions" is undefined and vague in the Division's motion. Defendants believe this issue should be resolved if and when it arises at trial with a more complete understanding of the potential relevance and prejudice of such evidence. Accordingly, the motion should be denied.

**VI.     The Court Should Deny the Division's Motion to Exclude Ignorance of the Law Evidence**

In its sixth motion *in limine*, the Division seeks to exclude "evidence and argument from Defendants that they were ignorant of the Sherman Act or the illegality of the charged nonsolicitation agreements." Mot. 14. Defendants do not intend to argue that ignorance of the law is a defense. But defendants do not concede that this limitation should otherwise limit their ability to contest the intent element of the Sherman Act. The Division contends that the Sherman Act is a "general intent crime," and suggests that intent evidence is utterly relevant. *See* Mot. 14. This is flatly incorrect. As explained above, *see supra* 3, the Division must prove that defendants "knowingly . . . became a member of the conspiracy charged in the indictment, knowing of its goal and intending to help accomplish it." Final Jury Instructions, *Penn*, No. 1:20-cr-00152, Dkt. 921 at 16 (D. Colo. Dec. 16, 2021).

The Division does not (and cannot) point to a single case where a court, prior to trial, extended the principle concerning ignorance of the law to a blanket prohibition on the exclusion of all intent evidence. The reason is obvious: courts reject motions for the wholesale exclusion of intent evidence, and instead favor specific trial objections and limiting jury instructions. *See, e.g.*, Hr'g Tr., *U.S. v. Tokai Kogyo*, No. 1:16-cr-63, Dkt. 159 (S.D. Ohio Oct. 13, 2017) at 60:12-16, 64:20-65:1 (rejecting Division's request to exclude all intent evidence, reasoning that evidence related to impermissible purposes may be circumstantial evidence of lack of agreement and should not be categorically excluded); Hr'g Tr., *U.S. v. Lee, et al.*, No. 3:09-cr-00110, Dkt. 613 (N.D. Cal. Dec. 13, 2011), at 56:14-19 (declining to categorically exclude evidence relating to ignorance of the antitrust law in favor of specific trial objections and a jury instruction).

Accordingly, to the extent that the Division's motion seeks a wholesale exclusion of intent evidence, it should be denied.

## CONCLUSION

Accordingly, the Court should deny the Division's omnibus motions *in limine*.

Dated:  January 14, 2022                                      Respectfully submitted,

Cliff Stricklin                                                           /s/ *John F. Walsh III*
King & Spalding                                                 John F. Walsh III
1401 Lawrence Street, Suite 1900            Wilmer Cutler Pickering Hale & Dorr LLP
Denver, CO 80202                                           1225 17th Street, Suite 2600
(720) 535-2327                                                  Denver, CO 80220
cstricklin@kslaw.com                                      (720) 274-3154
                                                                            john.walsh@wilmerhale.com

Jeffrey Stone
Daniel Campbell                                              John C. Dodds
McDermott Will & Emery LLP                  Morgan Lewis & Bockius LLP
444 W Lake St.                                                1701 Market Street
Chicago, IL 60606                                          Philadelphia, PA 19103-2921
(312) 984-2064                                                (215) 963-4942
jstone@mwe.com                                         john.dodds@morganlewis.com

Justin P. Murphy                                            *Counsel for Defendant DaVita Inc.*
McDermott Will & Emery LLP
500 North Capitol Street, NW
Washington, DC 20001-1531
(202) 756-8018
jmurphy@mwe.com

*Counsel for Defendant Kent Thiry*

## CERTIFICATE OF SERVICE

I certify that on January 14, 2022, I filed the above document with the Clerk of the Court using CM/ECF, which will send electronic notification thereof to all registered counsel.

                                                                            /s/ *John F. Walsh III*
                                                                            John F. Walsh III

15