IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-0229-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

    1. DAVITA INC.,
    2. KENT THIRY,

        Defendants.

---

**DEFENDANTS' JOINT OPPOSITION TO THE DIVISION'S SUPPLEMENTAL MOTION *IN LIMINE* TO ADMIT EVIDENCE OF DEFENDANTS' PURPORTED PRACTICE OF FALSELY INVOKING THE ATTORNEY-CLIENT PRIVILEGE**

---

The Antitrust Division of the Department of Justice (the "Division") moves to admit evidence of defendants' supposed "practice of seeking to falsely shield correspondence under the attorney-client privilege," specifically by "copying counsel and/or changing email subject lines to give the incorrect impression that email correspondence was for the purpose of obtaining legal advice." Dkt. 138 at 2.  According to the Division, such supposed practice of "concealment" is "evidence of the existence of Defendants' participation in [the alleged] criminal conspiracies." *Id.*  The Division's sole proffered evidence for the existence of this purported practice is the testimony of one witness, who is the subject of a separate motion by the Division to prevent the jury from knowing about his long pattern of duplicitous, deceitful conduct.  The Division relies on this former executive's judgment that attorney-client privilege did not apply to some of defendants' communications, *see* Dkt. 138 at 1, but the views of that witness are dubious given that he is not a lawyer (to say nothing of the fact that he lacks credibility generally—as the

1

Division itself knows, he is a serial liar, *see* Dkt. 139).  Simply put, the Division's claims are without merit and the record belies any supposed practice of "seeking to falsely shield correspondence under the attorney-client privilege," Dkt. 138 at 2, as defendants have produced more than 340,000 documents in this case while the Division has challenged a mere 15 entries on DaVita's privilege log.

Aside from this troubling aspect of the Division's motion, it should be denied for several reasons.  First, the supposed practice cited by the Division of "copying counsel and/or changing email subject lines," Dkt. 138 at 2, lacks relevance or probative value.  The Division makes no effort to show that this purported practice was part of the alleged conspiracy rather than a simple reflection of the broad role of lawyers in a corporate environment and a prudent business effort to ensure that privileges are not inadvertently waived.  Indeed, executives in a corporate environment seek and receive legal advice—something that is to be encouraged—on a broad range of challenging issues that often have both business and legal components.

Second, whatever probative value evidence of the practice might have is substantially outweighed by the unfair prejudice of admitting such evidence.  There is a significant risk that jurors who are unfamiliar with the contours of the attorney-client privilege would mistakenly hold legitimate actions against defendants.  Third, injecting this issue into the case would also require a minitrial on the privilege, delaying the conclusion of the trial.  Finally, admitting the Division's evidence would impermissibly invite the jury to rely on extra-record evidence.

## LEGAL STANDARD

Only relevant evidence is admissible.  Fed. R. Evid. 401, 402.  The Court should exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more

of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403. The Court "has not only the discretion but also the duty to exclude evidence of little or no relevance or probative value which might have a prejudicial effect." *Sec. State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971).

## ARGUMENT

### I. THE DIVISION'S EVIDENCE HAS NO RELEVANCE OR PROBATIVE VALUE

To be relevant, evidence must have a "tendency to make a fact more or less probable." Fed. R. Evid. 401(a). Defendants' supposed practice of copying counsel or changing email subject lines, however, has no plausible connection to any supposed effort to conceal the alleged conspiracy, and therefore has no relevance or probative value to the issue of whether defendants engaged in a conspiracy to allocate a labor market.

First, the Division's own description of defendants' supposed practice refutes the Division's claim of relevance. According to the Division, defendants used this practice broadly, without regard to whether the communication related to the alleged conspiracy or to some other subject. The Division says the practice was "widespread" and encouraged as a "best practice[]." Dkt. 138 at 1. The Division also says that communications related to the alleged non-solicitation issue were merely "includ[ed]" among *all* the correspondence to which defendants applied their supposed practice. *Id.* at 2. Thus, what the Division alleges is a generally used practice. But the Division offers no evidence that defendants had such a general practice—which they did not— much less that they did so specifically to conceal the alleged conspiracy. After all, corporate executives may and do seek legal advice on myriad legitimate topics, and the attorney-client privilege generally protects all such communications. Therefore, even if defendants did have a

3

practice of "copying counsel and/or changing email subject lines," Dkt. 138 at 2, it does not show that they were specifically trying to conceal the alleged conspiracy.

Second, the Division's theory of concealment is inconsistent with how attorney-client privilege actually works and how it has been used in this case. Copying a lawyer or inserting boilerplate language into a communication is neither necessary nor sufficient to withhold it pursuant to attorney-client privilege. Rather, a document would be withheld as privileged only during a subsequent legal dispute, based on an independent determination by counsel that the communication's purpose was to obtain confidential legal advice. *See, e.g.*, *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010). The record in this case proves the point: Defendants have produced to the Division and not asserted privilege regarding: more than 7,000 documents that contain the phrase "privileged and confidential"; nearly 1,000 documents that contain the phrase "legal advice"; and more than 23,000 documents that were sent or copied to legal counsel. *See* Dkt. 114 at 2-3. Indeed, the Division has challenged only 0.04% of defendants' privilege assertions. Dkt. 114 at 2. By definition, the numbers refute the Division's assertion of an inappropriate practice.

Third, the Division's theory of concealment does not accord with the reality of how businesses guard their confidential communications or interact with lawyers. It is, in fact, a prudent and widespread practice for businesspeople to mark a communication "privileged" whenever they believe it *might* be privileged, in order to alert recipients and later reviewers of the potential applicability of a privilege.[1] This helps prevent the inadvertent waiver of privilege,

---

[1] *See* "10 tips for safeguarding privileged communications in a remote work world," Christopher G. Campbell (Apr. 13, 2021), *available at* https://bit.ly/3oSCgQv.

4

for example by a recipient's forwarding it to a non-lawyer or by producing it in discovery to an opposing litigant. *See Burke v. Regalado*, 935 F.3d 960, 1023 (10th Cir. 2019) ("A party waives the privilege when he voluntarily discloses to a third party material or information that he later claims is protected." (quotation cleaned)). And lay businesspeople cannot be faulted for taking a broad, prophylactic approach to applying such markings; it would be imprudent for them to be stingy given the potential consequences of disclosure, and it would be impracticable for them to have to consult their lawyers about the applicability of privilege each time they send a communication. Moreover, the mere inclusion of lawyers on communications does not necessarily even reflect a desire or belief that the communication be privileged. Rather, as courts have recognized, lawyers often serve as trusted business advisers, and therefore they are often included in non-legal discussions specifically for their business advice, not out of a desire to cloak the discussion in attorney-client privilege. *See, e.g.*, *Colton v. United States*, 306 F.2d 633, 638 (2nd Cir. 1962) ("Attorneys frequently give to their clients business or other advice . . . separate[] from their essentially professional legal services."); *Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1268 (D.C. Cir. 2018).

The government's cases do not support its motion. Indeed, not one of the cited cases — actually involved the alleged abuse of the attorney-client privilege. In *United States v. Gacnik*, the court remarked that "the act of concealment may be taken as evidence of a conspiracy," but the act of concealment there was a specific effort to hide contraband—explosive materials—from the police during a search. 50 F.3d 848, 851-52 (10th Cir. 1995). In *United States v. Gold*, the defendant specifically sought to conceal the conspiracy by instructing a co-conspirator to "ditch" or "remove" incriminating records and by lying to a prospective buyer. 743 F.2d 800, 811, 825

(11th Cir. 1984).  And in *United States v. Freeman*, the defendant warned a co-conspirator to "split" after their drug conspiracy began to unravel.  498 F.2d 569, 575 (2d Cir. 1974).  Thus, all these cases involved deliberate efforts to hide the specific illegal activity itself, not general practices whose potential consequence might incidentally hide illegal activity.  Notably, the government cites no case in which the defendant's proved or alleged overbroad inclusion of lawyers or labeling of documents as privileged supported an inference that the defendant participated in unlawful activity.

## II. WHATEVER PROBATIVE VALUE THE EVIDENCE MIGHT HAVE IS VASTLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, MISLEADING THE JURY, UNDUE DELAY, AND WASTING TIME

The evidence and argument that the Division seeks to use at trial would mislead the jury and cause unfair prejudice, i.e., "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997).  Lay jurors are likely unfamiliar with the contours of attorney-client privilege and with ordinary and prudent business practices relating to the privilege.  Consequently, there is a high risk that jurors will mistakenly condemn the practices cited by the Division even where they are entirely legitimate, which they often are, as explained above.

Moreover, by eliciting evidence concerning defendants' supposed practice of "copying counsel and/or changing email subject lines to give the incorrect impression that email correspondence was for the purpose of obtaining legal advice." Dkt. 138 at 2, the Division would create a trial within a trial about the legal and business roles of counsel in a company and about the practice of using attorney-client privilege to protect confidential communications regarding legal advice.  Defendants would then have to call numerous new witnesses, including individuals

on the communications at issue, lawyers for defendants, and expert witnesses to testify about those issues in general and with particular respect to defendants and the communications at issue.

Finally, the Division's argument would impermissibly invite the jury to rely on evidence outside the record. Specifically, the jury might speculate, without any factual basis, that defendants "falsely" asserted attorney-client privilege over communications about the alleged conspiracy, withheld that additional (non-existent) inculpatory evidence from the Division, and kept it out of trial. A prosecutor may not go "outside the record and ma[k]e statements as to facts not proven." *United States v. Latimer*, 511 F.2d 498, 503 (10th Cir. 1975); *accord United States v. Thompson*, No. 05-CR-00141-MSK, 2006 WL 2925700, at *11 (D. Colo. Oct. 11, 2006).

## CONCLUSION

Dated: February 22, 2022

Respectfully submitted,

| | |
|---|---|
| Jeffrey Stone<br>Daniel Campbell<br>McDermott Will & Emery LLP<br>444 W Lake St.<br>Chicago, IL 60606<br>(312) 984-2064<br>jstone@mwe.com | /s/ *John F. Walsh III*<br>John F. Walsh III<br>Wilmer Cutler Pickering Hale & Dorr LLP<br>1225 17th Street, Suite 2600<br>Denver, CO 80220<br>(720) 274-3154<br>john.walsh@wilmerhale.com |
| Justin P. Murphy<br>McDermott Will & Emery LLP<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>(202) 756-8018<br>jmurphy@mwe.com | John C. Dodds<br>Morgan Lewis & Bockius LLP<br>1701 Market Street<br>Philadelphia, PA 19103-2921<br>(215) 963-4942<br>john.dodds@morganlewis.com |
| *Counsel for Defendant Kent Thiry* | *Counsel for Defendant DaVita Inc.* |

**CERTIFICATE OF SERVICE**

I certify that on February 22, 2022, I filed the above document with the Clerk of the Court using CM/ECF, which will send electronic notification thereof to all registered counsel.

*/s/ John F. Walsh III*
John F. Walsh III