IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-0229-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

   1.  DAVITA INC.,
   2.  KENT THIRY,

        Defendants.

---

**DEFENDANTS' JOINT OPPOSITION TO THE DIVISION'S SUPPLEMENTAL MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ANCILLARITY**

---

      The Antitrust Division of the Department of Justice (the "Division") moves "to exclude evidence or argument that defendants' [alleged] conspiratorial agreements were ancillary to business transactions, unless defendants make a satisfactory pretrial proffer that legally sufficient evidence exists to support a defense under the ancillary-restraints doctrine." Dkt. 144 (Mot.) at 1. The Division does not specify which exhibits it seeks to exclude, but argues that the "joint ventures, asset sales, and other potential transactions identified on defendants' preliminary exhibits list would not meet the requirements of [the ancillary-restraints] doctrine" and should therefore be excluded as "irrelevant." *Id.* at 1-2.

      The Division's motion is another part of its overall effort to deprive defendants of any meaningful ability to defend themselves by sanitizing the trial of any evidence that might call into question the Division's narrative or the elements of the charges. The evidence shows that discussions on which the Division's charges are based occurred in the context of larger business

dealings, including discussions about strategic partnerships. Indeed, as discussed more fully below, several of the communications cited in the Superseding Indictment explicitly reference strategic partnership as the reason for the communications themselves. The Division stripped those references out of the Superseding Indictment, and now seeks to strip them out of the trial itself. The Division's game of "hide the contrary evidence" must stop and the jury should consider all of the evidence.

The Division's motion is predicated on a false premise: that the evidence of the alleged co-conspirators' business partnerships, joint ventures, transactions and relationships are relevant *only* to the "ancillary restraints" doctrine. They argue from that premise the Court should hold a preliminary hearing, following a "detailed factual proffer" from defendants, to determine whether the specific evidence of the alleged co-conspirators' business relationships would be sufficient to satisfy the "ancillary restraints" doctrine, and to exclude such evidence as "irrelevant" if found insufficient to meet that standard.

What the Division's motion ignores is that this evidence is unquestionably relevant to multiple issues besides "ancillarity." The evidence of the alleged co-conspirators' business partnerships, joint ventures, transactions and relationships is relevant to determining whether defendants entered into the alleged nonsolicitation agreements with the "purpose" and "intent" "of allocating the [relevant] market," Dkt. 132 (Order on MTD), at 18-19. It is also relevant to determining whether the co-conspirators' decisions about whether and how to solicit from DaVita (or, in the case of Count 1, for DaVita to solicit from SCA) were made pursuant to "agreements" or for independent business reasons. *Id.* And it is relevant to whether any alleged agreements were naked, i.e., whether they were made with "no purpose except stifling

competition." *Id.* at 17-18.  Finally, as the Division acknowledges, this evidence would "provide context to [alleged] co-conspirators' emails" that the Division itself seeks to admit.  Mot. at 9.

Given its relevance to the core elements of the charged offense, and the crucial context it provides for the Division's own exhibits, this evidence is properly admissible regardless of any arguments about ancillarity.  Moreover, the "detailed factual proffer" that the Division seeks pretrial is neither necessary nor appropriate.  A pretrial proffer of such evidence would unnecessarily set up a duplicative "trial before the trial" and force defendants to litigate their strategy, arguments, and evidence on critical issues prior to hearing the Division's case and without any corresponding benefit.  The defense has no obligation to present any evidence in a criminal trial—the burden of proof, it bears repeating, is on the Division—and the Division should not be permitted to force the defense to pre-litigate what evidence it might, or might not, choose to present.  The Division should not be afforded such a preview and no precedent is cited holding otherwise.

Accordingly, the Court should deny the Division motion in full, permitting defendants to introduce evidence and argument concerning these transactions at trial.

## LEGAL STANDARD

Relevant evidence is generally admissible.  Fed. R. Evid. 402.  "In weighing the factors under Rule 403, the court should generally give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *SEC v. Peters*, 978 F.2d 1162, 1171 (10th Cir. 1992) (quotation omitted) (exclusion is an "extraordinary remedy"); *see also Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997) ("the state may not arbitrarily deny a defendant the ability to present testimony that is relevant and material and vital to the defense") (quotation

omitted). Further, courts give defendants particularly wide latitude to present evidence of intent. *See Vinieris v. Byzantine Mar. Corp.*, 731 F.2d 1061, 1064 (2d Cir. 1984) ("No evidence which bore even remotely on [intent] should have been kept from the jury, unless it interjected tangential and confusing elements which clearly outweighed its relevancy."); *United States v. Foshee*, 578 F.2d 629, 632, 634 (5th Cir. 1978) (noting "liberal policy as to the admission of evidence" relating to intent in mail fraud cases).

## ARGUMENT

I. **EVIDENCE OF THE ALLEGED CO-CONSPIRATORS' BUSINESS RELATIONSHIPS IS HIGHLY RELEVANT TO VARIOUS ELEMENTS AND ISSUES IN THE CASE BESIDES "ANCILLARITY"**

   A. **This Evidence Is Relevant to the Core Elements of Purpose, Intent and Agreement**

To convict defendants of the charged per se antitrust violations, the Division must prove that defendants' purpose and intent in entering the alleged nonsolicitation agreements was to allocate a market, and evidence of strategic partnerships—including joint ventures, asset sales, and other contemplated and completed transactions—between defendants and their alleged co-conspirators are relevant to those issues.[1]

In ruling on defendants' motion to dismiss, this Court rejected the Division's "assertion that *all* non-solicitation agreements . . . are horizontal market allocation agreements and thus per se unreasonable." Order on MTD at 16. Thus, this Court held:

---

[1] In addition to actual joint ventures, the parties also served as business referral sources for one another, DaVita pursued a purchase of SCA, and one or more of the executives implicated in this case were potential successors for Mr. Thiry at DaVita. All of these business justifications could explain a non-solicitation understanding in a way that does not violate the Sherman Act because it was not entered into with the purpose or intent of allocating any market. Alternate explanations related to purpose and intent are clearly admissible under this Court's ruling on the motion to dismiss.

4

> [T]he government will not merely need to show that the defendants entered [a] non-solicitation agreement and what the terms of the agreement were.  It will have to prove beyond a reasonable doubt that defendants entered into an agreement with **the purpose of allocating the market** for senior executives . . . [and] it will have to prove that the defendants **intended to allocate the market** as charged in the indictment.

Order on MTD at 18-19 (emphasis added) (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940)).

Defendants' evidence of strategic partnerships—including joint ventures, asset sales, and other transactions—between defendants and their alleged co-conspirators would offer the jury a sound basis to conclude that, even if defendants agreed not to solicit employees, they lacked the requisite purpose and intent to **allocate a market**.  To the contrary, based on such evidence, the jury could find that the alleged nonsolicitation agreements were undertaken for the purpose and with the intent of facilitating such transactions between the companies, and facilitating their long-term strategic partnerships more broadly.  The probative value of such evidence is especially significant because the Division lacks direct evidence that defendants entered into an alleged nonsolicitation agreement with the purpose and intent to allocate a market.  The Division will instead urge the jury to infer such purpose and intent from circumstantial evidence, presumably, communications and testimony about defendants' and their alleged co-conspirators' discussions, and practices regarding the solicitation of each other's employees.  Defendants' evidence supports the contrary, exculpatory inference, including by providing crucial context for the Division's evidence.

For example, the Division relies on an email sent by defendant Thiry on October 20, 2014, to the CEO of SCA, saying, "Someone called me to suggest they reach out to your senior biz dev guy for our corresponding spot.  I explained I do not do proactive recruiting into your

ranks." Dkt. 74, ¶ 11(a). The Division alleges that this email is an "example" of defendants' "participat[ion] in meetings, conversations, and communications with co-conspirators to discuss the solicitation of senior-level employees of DaVita and SCA," *id.*, and will presumably ask the jury to infer from this email the existence of an agreement with the purpose and intent of allocating a market. But at the same time Thiry sent this email, defendants were actively negotiating the purchase of an ownership position in an SCA ambulatory surgery center as part of broader strategic partnership discussions between DaVita's vascular access centers and SCA's ambulatory surgery centers. That purchase was finalized in an agreement between DaVita and SCA subsidiaries entered into just twelve days after Thiry's supposedly incriminating email. *See* Mot., Ex. 1. Thus, the purchase transaction provides important context for Thiry's email: rather than trying to allocate a labor market, he was merely trying to protect a pending transaction and ongoing business discussions by maintaining goodwill with SCA.

The non-disclosure agreement between SCA and a subsidiary of DaVita entered into on March 6, 2018, is similarly relevant. *See* Mot., Ex. 2. This agreement reflects the fact that the strategic partnership between DaVita and SCA continued for several years and involved numerous potential transactions. Again, given the risk that solicitation of SCA executives—many of whom were involved in the specific transactions under discussion—would damage that partnership, this non-disclosure agreement supports the conclusion that the purpose and intent of any continuing nonsolicitation agreement remained the protection of the business collaboration between the companies, not the allocation of a labor market.

For similar reasons, evidence of strategic partnerships and business relationships between the alleged co-conspirators is probative of whether there was an "agreement" not to solicit. An

"agreement" in restraint of trade is an essential element of any claim under Section 1 of the Sherman Act, 15 U.S.C. § 1. The Division here charges that defendants entered into three nonsolicitation agreements. Dkt. 74 at ¶¶ 9-10, 17-18, 25-26. The Division will seek to introduce evidence about decisions the alleged co-conspirators made about whether, when, and how they might solicit employees, and they will argue that those decisions were made because of agreements between the alleged co-conspirators. Evidence of the strategic partnerships and business relationships between the parties offers an alternative explanation for those decisions. A firm, or an executive, could reasonably conclude that it is in their independent business interest not to "actively solicit" the employees of a company that they partner with, had significant business relationships with, or hoped to do business with in the future.

### B. This Evidence Is Relevant to Whether the Alleged Agreements Were "Naked"

In denying defendants' motion to dismiss, the Court held that the Division bears the burden of proving not only that "the purpose and effect of the [alleged nonsolicitation] agreement[s] was to allocate the market," Order on MTD at 8, but also that the alleged nonsolicitation agreements were "**naked** agreement[s] to allocate the market," for only then would the agreements be per se unlawful, *id.* at 15 (emphasis added); *see also id.* at 17-18. Consequently, the Court recognized that defendants later "could choose to challenge the Division's allegations that this was a naked agreement to escape a per se designation." *Id.* at 18. And as this Court stated, a "naked" restraint is one that has "'no purpose except stifling competition.'" Order on MTD at 5 (quoting *United States v. Topco Assocs., Inc*, 405 U.S. 596, 608 (1972)). The strategic-partnership evidence the Division now seeks to exclude is admissible to show that even if the alleged nonsolicitation agreements were allocation agreements, they

7

would not be **naked** allocation agreements because their sole purpose was not to stifle competition but, as discussed above, to facilitate the strategic partnership between defendants and its alleged co-conspirators through joint ventures, asset sales, and other contemplated and completed transactions.

## II. DEFENDANTS SHOULD NOT BE REQUIRED TO PROVIDE A DETAILED FACTUAL PROFFER OF THEIR EVIDENCE RELATING TO ANCILLARITY

The Division's demand for "a detailed factual proffer" before trial of the evidence defendants intend to use to show ancillarity, Mot. at 7, is unfounded, for several reasons.

First, as explained above, this same evidence is relevant and admissible **regardless** of its relevance to ancillarity because it would rebut the Division's case with respect to critical elements of the offense unrelated to ancillarity, among other things, whether the purpose and intent of the alleged nonsolicitation agreements were to allocate a market, whether there were "agreements" at all, and whether such alleged agreements were "naked."  Accordingly, there is no risk of "repeated in-trial objections" or "prejudice from the introduction of" irrelevant evidence,[2] Mot. at 7, and no need for an extraneous and burdensome pretrial evidentiary hearing. The evidence is undoubtedly relevant, and no pretrial hearing (or detailed proffer of the evidence) is necessary to determine its relevance.

Second, even if ancillarity were the *only* issue to which this evidence was potentially relevant—which is clearly incorrect—that would not justify requiring defendants to make a "detailed factual proffer" of all evidence of the business relationships and strategic partnerships

---

[2] Defendants also note that these alleged sources of "prejudice" are illusory:  first, objections to evidence at trial are routine and not the source of "prejudice" to any party, but an ordinary part of the trial process; second, the Court is well-equipped to prevent the admission of actual irrelevant evidence at the moment it is offered.

between the alleged co-conspirators that the defendants might seek to introduce at trial. The Division essentially argues that it is necessary for the Court to determine before trial whether the "ancillary restraints" doctrine is satisfied before the jury can be exposed to or consider evidence about underlying business relationships between the parties—evidence that goes to the heart of the elements in this case. That position finds no basis in the law. Rule 104(c) sets forth the only "preliminary questions" that the Court "must" decide in a manner "so that the jury cannot hear it," and none of those questions are raised by the ancillarity issue. Any other "preliminary question" concerning the relevance of evidence may be decided by the Court at any time, including "during trial[] or at the close of evidence before an instruction on the defense is submitted to the jury." *United States v. Graham*, 663 Fed. Appx. 622, 625-26 (10th Cir. 2016); *see also* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists," the "court may admit the proposed evidence on the condition that the proof be introduced later."). In fact, Defendants' only burden is to "'advance[] plausible arguments . . . that the practice is ancillary.'" Order on MTD at 12 (quoting *Paladin Assoc., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003)). Defendants can carry that burden entirely at trial, but in any event the arguments and evidence that defendants have presented in this brief are more than sufficient to warrant the opportunity to do so.[3]

---

[3] The Division advances an unduly narrow view of "ancillary": "the agreement must be both related (collateral) and secondary (subordinate) to the main transaction," and "must be reasonably necessary to achieving the efficiency contemplated by the main transaction." Mot. 3 (quotation cleaned). But clearly courts do not always apply such a stringent test, and with good reason, since the ultimate issue under Section 1 of the Sherman Act is whether the agreement is an "unreasonable restraint[] of trade." *National Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2161 (2021). As another leading antitrust case put it, "ancillary" restraints are those that are "part of a larger endeavor whose success [the restraints] promote." *Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 188-89 (7th Cir. 1985).

Here, given the relevance of this same evidence to other elements of the offense and especially given the showing defendants have already made, no more extensive pretrial showing is appropriate, let alone required. In fact, under the circumstances, the Division's request would unnecessarily burden defendants by forcing them to prepare for a substantial evidentiary hearing just weeks before trial—a hearing that would be duplicative of a substantial portion of the trial—and would substantially prejudice defendants by forcing them to reveal their trial strategy, arguments, and evidence to the prosecution before trial.

## CONCLUSION

Accordingly, the Court should deny the Division's motion *in limine* and permit defendants to introduce evidence of joint ventures, asset sales, strategic partnership discussion, and other realized or potential transactions between defendants and the alleged co-conspirators at trial.

Dated:  February 22, 2022                                Respectfully submitted,

Jeffrey Stone                                            /s/ *John F. Walsh III*
Daniel Campbell                                          John F. Walsh III
McDermott Will & Emery LLP                               Wilmer Cutler Pickering Hale & Dorr LLP
444 W Lake St.                                           1225 17th Street, Suite 2600
Chicago, IL 60606                                        Denver, CO 80220
(312) 984-2064                                           (720) 274-3154
jstone@mwe.com                                           john.walsh@wilmerhale.com

Justin P. Murphy                                         John C. Dodds
McDermott Will & Emery LLP                               Morgan Lewis & Bockius LLP
500 North Capitol Street, NW                             1701 Market Street
Washington, DC 20001-1531                                Philadelphia, PA 19103-2921
(202) 756-8018                                           (215) 963-4942
jmurphy@mwe.com                                          john.dodds@morganlewis.com

*Counsel for Defendant Kent Thiry*                       *Counsel for Defendant DaVita Inc.*

**CERTIFICATE OF SERVICE**

I certify that on February 22, 2022, I filed the above document with the Clerk of the Court using CM/ECF, which will send electronic notification thereof to all registered counsel.

*/s/ John F. Walsh III*
John F. Walsh III