IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Criminal Case No. 1:21-cr-00229-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DAVITA INC.
2. KENT THIRY

    Defendants.

## ORDER ON PENDING MOTIONS

This order addresses multiple pending motions. Due to the volume, the Court is only able to provide its ruling and a brief explanation of the reason for the ruling. The Court's order on the *James* issues is being issued separately.

**1.** **United States' Motion for a Rule 17(c) Subpoena and Judicial Determination of Privilege Claims, ECF No. 101: GRANTED IN PART AND DENIED IN PART.**

This motion asked the Court to review 13 documents in redacted and unredacted form, in camera, in order to assess the propriety of defendant's assertion of privilege. The Court has done so, and its assessments are listed below. I have used the labels of the documents as I received them, adding the date of the email or the most recent email in an email chain for additional identification. Note, the Court is sustaining claims of privilege where it finds that the client is seeking or receiving legal advice from counsel. The Court is denying a claim of privilege where

1

it finds that the communication was not for the purpose of seeking or receiving legal advice, even though a lawyer was included in an email distribution list.

Entry 1 DVA00194249 REDACTED (11/3/13 email chain): Claim of privilege sustained as to the Thiry and Rivera emails. Claim of privilege denied as to the Staffieri email.

Entry 3 DVA01539162 REDACTED (3/22/15 email chain): Claim of privilege sustained.

Entry 4 DVA01899959 REDACTED (1/23/12 email chain): Claim of privilege sustained.

Entry 6 DVA00016775 REDACTED (11/14/13 email chain): Claim of privilege denied.

Entry 7 DVA00016894 REDACTED (11/11/13 email chain): Claim of privilege sustained as to the 11/11/13 email. Claim of privilege denied as to the remainder of the redacted information.

Entry 8 DVA00017292 REDACTED (11/3/13 email chain): Claim of privilege sustained.

Entry 9 WITHHELD (8/28/14 email chain): Claim of privilege sustained.

Entry 10 WITHHELD (11/2/13 email): Claim of privilege denied.

Entry 11 WITHHELD (1/23/12 email chain): Claim of privilege sustained.

Entry 12 WITHHELD (1/23/12 email): Claim of privilege sustained.

Entry 13 WITHHELD (1/23/12 email chain): Claim of privilege sustained.

Entry 14 WITHHELD (2/20/11 email): Claim of privilege denied.

Entry 15 WITHHELD (11/19/13 email chain): Claim of privilege sustained.

2. **United States' Motion to Exclude Defendants' Expert, ECF No. 106: DENIED WITHOUT PREJUDICE.**

In this motion the United States demanded a pretrial hearing as to the admissibility of the expert opinions of defendants' retained expert, Dr. Pierre-Yves Cremieux. There was discussion

of the motion at the recent motions hearing.  *See* ECF No. 200 at 10-27.  However, the defendants had not produced the expert's report (because a report had not been prepared); the defendants had only been provided some charts, and even the charts had not yet been given to the government.  Defense counsel undertook to provide at least the charts, and any other writing reflecting the expert's opinions, on the day following the hearing.  *Id.* at 14.  Government counsel reserved the right to file an addition motion if it determines that the additional information is insufficient under *Daubert* and Rule 702.  *Id.* at 17.  I note that defendants filed a notice of submission of the expert's report on March 14, 2022.  ECF No. 202.  I am not aware of an additional motion having been filed by the government concerning the issue since that time, although the government has hardly had enough time to do so.

If a "*Daubert"* motion is filed, we will have to hold a hearing outside the presence of the jury but during the time scheduled for the trial.  As the parties have been informed, the Court is not available to conduct a hearing before the March 28, 2022 trial date due to an ongoing trial.

**3.     United States' Omnibus Motions in Limine, ECF No. 107: GRANTED IN PART AND DENIED IN PART.**

Please bear in mind that an evidentiary ruling in limine is always subject to reconsideration in the context of the evidence and argument presented at trial.

a. Exclude evidence/argument of procompetitive justifications.

Deny.  This evidence might be relevant to the question whether the defendants entered into an agreement to allocate the market and did so with the intent to allocate the market, as charged in the indictment, i.e., whether they entered into an agreement with purpose of allocating the market for senior executives (Count I) and other employees (Counts 2 and 3).

b. <u>Exclude evidence/argument of defendants' procompetitive intentions</u>.

Deny. Same reason.

c. <u>Exclude evidence/argument of defendants' claimed good character</u>.

Grant. However, the example provided in defendants' response, i.e., that defendants are attentive to employees' professional development, is not evidence of good character that this ruling would exclude.

d. <u>Exclude evidence/argument of potential penalties/consequences of conviction</u>.

Grant. As in any other criminal case, the jury will be instructed to the effect that if the defendants are convicted, sentencing will be the job of the Court, and they should not speculate on what the sentencing or other consequences of a conviction might be. This does not, of course, restrict defendants' ability to cross-examine the government's witnesses as to any "deals" they have received. That would bear on the witness's credibility.

e. <u>Exclude evidence/argument of the government's charging decisions</u>.

Deny. The Court does not understand what the motion addresses. The indictment in this case will be presented to the jury, probably in an instruction. As indicated above, the defendants will have the right to cross-examine any government witness concerning any deal that has been offered to that witness.

f. <u>Exclude evidence/argument of defendants' claimed ignorance of the law</u>.

Grant.

4. **Defendants' Joint Motion in Limine to Exclude Lay Testimony Regarding Mr. Thiry's or any DaVita Representative's Intent, Knowledge, and State of Mind, ECF No. 108: DENIED.**

This motion is overly broad and is denied as framed. No person can know another person's state of mind except that other person. However, evidence of another person's state of mind (intent) can come in several forms. A witness could testify to statements made by the speaker to, or in the presence of, the witness that directly show the speaker's intent. A witness could testify about statements or actions from which an inference might be drawn as to a person's intent. A court could, as a matter of discretion, allow opinion testimony regarding another person's intent if a proper foundation were laid.[1] This Court will make decisions about lay opinion testimony regarding Mr. Thiry's or other witnesses' intent in the context of the evidence and arguments at trial.

---

[1] In *United States v. Hoffner,* 777 F.2d 1423 (10th Cir. 1985), on which the government relies, the Court stated that "the admission of lay opinion testimony is within the sound discretion of the trial court and will not be overturned on appeal absent a clear abuse of discretion." *Id.* at 1425. The cases cited by the court for the proposition that other courts have been "very liberal" in admitting such opinion testimony do not, in my view, necessarily support that conclusion. The court made it quite clear that not all such opinion testimony should be admitted; indeed, the district court's exclusion of the opinion testimony was affirmed. A party will have to make a strong showing that a witness's opinion about another person's intent was rationally based on the perception of the witness, and that the witness's opinion will be helpful to a clearer understanding of the witness's testimony or the determination of a fact in issue before the Court will allow the opinion testimony.

**5.      Defendants' Joint Motion for Substantive Preliminary Jury Instruction, ECF No. 109: GRANTED.**

This Court is willing in every jury trial to give preliminary instructions to the jury before opening statements if the parties and the Court agree on the instructions. This could include, and often does, both general and case-specific instructions. The jurors are told that the instructions are designed to give the jurors an idea at the beginning of the case of what the law is; but they are also cautioned that the instructions are not final, and that they might change depending on the evidence and arguments presented during the trial. For the latter reason I do not typically provide copies of the preliminary instructions to the jurors. In my view this procedure is helpful not only to the jury but to counsel and the Court. Counsel can tailor their opening statements to what the Court has told the jury the law is if they wish; and the Court and counsel are not left to spend nights during the trial finishing jury instructions.

The Court is working on the instructions and will get back to the parties when it can. Even if the parties cannot reach a pre-trial agreement on instructions so that the Court could read to the jury a complete set of preliminary instructions, however, the Court plans to provide some type of preliminary instruction to the jury that will provide a basic introduction to the Sherman Act and the claims and defenses of the parties. It will prepare its own preliminary instruction if it does not receive something acceptable to the Court from either or both parties.

6.      **Defendants' Joint Motion in Limine to Exclude Compensation and Financial Circumstances Evidence, ECF No. 110: GRANTED.**

The parties' respective arguments underestimate the intelligence of jurors and juries. The evidence is not prejudicial, but it is also not relevant.

7.      **Defendants' Joint Motion in Limine to Preclude the Division from Characterizing the Alleged Conspiracies as Anything Other Than Agreements to "Allocate" Employees by "Not Soliciting" Them, As Charged in the Superseding Indictment, ECF No. 111: DENED.**

The Court is not going to dictate what the lawyers or the witnesses call the agreement. The Superseding Indictment does not charge a label. In substance it charges that the defendants entered into a horizontal market sharing agreement with both non-solicitation and notification terms. The evidence will determine what the agreement was.

8.      **United States' Supplemental Motion in Limine to Admit Evidence of Defendants' Practice of Falsely Invoking the Attorney-Client Privilege, ECF No. 138: DENIED.**

This type of "evidence," if it can be called evidence, is irrelevant and has no place in this trial. The Court has ruled on the privilege issues that were submitted for an *in camera* review.

9.      **United States' Supplemental Motion in Limine to Preclude Cross-Examination Concerning Criminal Convictions and Extramarital Affairs, ECF No. 139: GRANTED.**

Defendants have conceded the motion with respect to criminal convictions (witnesses Gabriel and Omrani). The Court finds that Mr. Kogod's "extramarital affair" (essentially, maintaining two families while not informing his wife of the second family) is inadmissible under Rules 402 and 608(b)(1) because it has marginal if any probative value as to his

7

truthfulness as to the business matters at issue in this case. *See, e.g., Cordova v. Hoisington,* No. 11-cv-806 GBW/ACT, 2014 WL 11842837, at *2 (D. N.M. Jan. 17, 2014 (the proposition that a secret extramarital affair is probative of untruthfulness has been overwhelmingly rejected by numerous courts in numerous contexts). The Court further finds that any marginal probative value is substantially outweighed by a danger of wasting time, and (despite my conviction that jurors are much more intelligent than they are sometimes given credit for by lawyers) by the possibility that a juror might discredit Mr. Kogod's testimony for reasons unrelated to his truthfulness and conduct as a senior executive of DaVita. *See United States v. Giovinco,* No. 18-cr4-14 (JSR), 2020 WL 832920, at *3 (S.D.N.Y. Feb. 20, 2020), *aff'd sub nom United States v. Esposito,* No. 20-2143-cr, 2021 WL 5492935, at * (2d Cir. Nov. 23, 2021) (unpublished) ("Evidence of an affair is not particularly probative of a witness's character for truthfulness, and is often unduly prejudicial, justifying exclusion under Rule 403).

10. **United States' Supplemental Motion in Limine to Exclude Evidence of Attorney Proffers, ECF No. 141: DENIED.**

This motion is apparently directed at FBI Form 302 memos as well as attorney proffers, so I will address both. Form 302 is a form on which government representatives, typically an FBI agent, summarizes the statements made to the agent by a prospective witness prior to trial. The Form 302 memo may or may not include quotes from the witness, but regardless, it is typically not signed by or otherwise verified by the witness. The scenario envisioned by the motion is that the witness makes a statement at trial that defense counsel in good faith believes is inconsistent with a statement the witness made to the FBI agent during the pretrial interview.

The question is whether and how defense counsel can use the Form 302 memo for impeachment purposes.

Generally, counsel may ask the witness whether he or she previously made the statement to the FBI agent that is documented in the Form 302 memo. Counsel may also show the Form 302 memo to the witness for purposes of refreshing recollection. If the witness denies having made the statement, the defense may call the FBI agent and ask whether the witness made the prior statement. If the FBI agent denies it, the Form 302 memo may be used for purposes of impeachment of the FBI agent pursuant to Rule 613(b), not as substantive evidence. *See United States v. Crinel,* No. 15-cr-61, 2016 WL 6441249, at *5 (E.D. La. Nov. 1, 2016); *United States v. Santistevan,* No. 11-cr-00406-CMA, 2012 WL 2862870, at **2-3 (D. Colo. July 11, 2012).

The attorney's proffer is somewhat different, because the prior statements were made by the attorney, not the witness. The attorney approached the government on his or her client's behalf and related what the attorney understood to be the witness's version of events, presumably hoping to gain some benefit for the client. If defense counsel has a good faith basis for believing that the witness's trial testimony is inconsistent with a previous proffer made by the attorney to the government, the attorney may ask the witness whether the witness knows that the attorney made a proffer on the witnesses behalf, and if so, whether he knows that the attorney represented that the witness would make the statement that counsel believes is a prior inconsistent statement. Counsel may also show any proffer notes or memos to the witness for purpose of refreshing the witness's recollection. Generally, if the witness denies knowledge of what the attorney represented or denies that the proffer accurately related the witness's recollection, the defense may call the attorney (or the FBI agent or other person with personal knowledge of the proffer)

as a witness and ask whether the proffer was made. If that individual denies it or states that he or she cannot recall, then defense counsel may use the proffer notes or memo for purposes of impeachment of that witness, but again not as substantive evidence. *See United States v. Triumph Capital Group, Inc.,* 544 F.3d 149, 162-63 (2d Cir. 2008).

I say "generally" in describing the foregoing scenarios, because the Court retains discretion to deny the use of these prior statements even for impeachment if the circumstances presented by the evidence at trial convince the Court that the prior statement, for whatever reasons, is not sufficiently trustworthy to be usable.

The Court is not inclined to permit the use of the Form 302 directly to impeach the original testifying witness unless the witness signed or otherwise verified the Form 302. *But see Santistevan,* 2012 WL 2862870 at *3 (allowing the use of a Form 302 for impeachment of the witness where the agent was unavailable due to the "extraordinary" circumstance that the agent who authored the memo was in Afghanistan and thus unavailable and there was no other witness to the interview was available to testify). Likewise, the Court is not inclined to permit the use of proffer notes or memos to impeach the original testifying witness.

11.     **United States' Supplemental Motion in Limine to Exclude Insufficient and Irrelevant Evidence for an Ancillarity Defense, ECF No. 144 (duplicate at ECF No. 145): GRANTED.**

The defense has never made an ancillarity defense. In their motion to dismiss defendants did not argue that the subject agreements were ancillary as opposed to naked restraints. ECF No. 49 at 6, n.1. They reserved the right to assert such a defense, but they have not done so. The parties' joint proposed jury instructions did not include an ancillarity defense. *See* ECF No. 174.

Defendants' opposition to this motion does not indicate that they will pursue an ancillarity defense. *See generally* ECF No. 180. When I asked defense counsel during the recent hearing whether the defendant would be arguing at trial that the agreement is an "ancillary agreement," the answer was that the defendants had not yet decided. ECF No. 200 at 26. That was on March 3, 2022 – 25 days before trial.

The defense does suggest in its opposition to the motion that the disputed evidence "is relevant to whether any alleged agreements were naked, i.e., whether they were made with 'no purpose except stifling competition.'" *Id.* at 2-3. But that is just a backdoor way of asserting an ancillarity defense, as defense knows, *see* ECF No. 49 at 6, n.1, and as the Court has held, *see* ECF No. 132 at 5. If the defense seriously is planning to change course and rely on an ancillarity defense, it must immediately inform the Court and counsel so that we can determine the effect, if any, on the current trial date.

The Court grants the pending motion as worded. However, this is not to say that the Court will exclude all evidence that the subject agreements had a purpose of promoting competition. Although the government apparently disagrees, the Court has held that defendants' intent matters. The evidence in question might be probative of the defendants' intent or lack of intent to enter into a horizontal market allocation agreement, or in the Court's words, whether "the defendants intended to allocate the market as charged in the indictment." ECF No. 132 at 19. The relevance of the evidence must be determined in the context of the evidence offered and arguments made at trial.

**12.    Defendants' Joint Supplemental Motions in Limine, ECF No. 146: GRANTED IN PART and DENIED IN PART.**

This has four parts:

a. Uncharged conduct.  Deny.  The government did provide notice that it anticipated offering evidence of four specific uncharged "employee-allocation agreements" under Rule 404(b).  Evidence that defendants entered into agreements similar to the charged agreements with four companies may be admissible under Fed. R. Evid. 404(b)(2) to show motive and intent.  Defendants cannot have an exclusive when it comes to evidence that is probative of their intent.  The Court does not at the present time have a basis to exclude evidence under Rule 403, but that can be evaluated on specific evidence as appropriate in the context of the evidence and arguments at trial.  The Court will give a limiting instruction that the jury should consider the evidence only for the proper purpose unless defendants request that the Court not do so when the time comes at trial.

b. Pre-conspiracy events.  Deny.  It depends on what the evidence is, but in general, evidence of communications and actions between DaVita and competitor companies leading up to the specific agreements that are the subject of the indictment will likely be admitted if the evidence is probative of the defendants' intent and is otherwise qualified for admission under the rules of evidence.

c. Summary evidence.  Moot.  This was discussed at the recent hearing, and the Court's understanding is that the parties reached an agreement concerning the nature and scope of the testimony of, for example, the FBI agent(s) who conducted the investigation on behalf of the

government.  *See* ECF No. 200 at 53-57.  To the extent that the issue was not resolved, the Court will consider any such summary evidence in the context of the evidence and arguments at trial.

   d.  Kent Thiry's specific financial circumstances.  Grant, as indicated above, with respect to ECF No. 110.

13. **United States' Motion to Restrict Documents, ECF No. 159: GRANTED IN PART AND DENIED IN PART (again).**

14. **United States' Motion for Ex Parte In Camera Giglio Review, ECF No. 161: GRANTED.**

15. **Defendants' Opposition to the Division's Ex Parte Motion for In Camera Giglio Review, ECF No. 182: DENIED.**

   ECF No. 159 was previously granted in part and denied in part.  *See* ECF No. 165.  ECF No. 182 is, in substance, a motion for reconsideration of the Court's order at ECF No. 165 granting in part and denying in part ECF No. 159.  These motions all relate to discovery of certain information concerning an anticipated witness named Bridie Fanning.  I address them together.

   In ECF No. 159 the government requested a designation of restricted access, meaning access only to the government and the Court, of two documents: ECF No. 160, a brief in support of a motion to restrict access to the second document; and ECF No. 161, a motion for an *ex parte in camera* "Giglio" documents.  Ms. Fanning is a former officer of alleged co-conspirator Surgical Care Affiliates.  The documents were found on her personal computer during the grand jury investigation of this case.

As a preliminary matter, the Court does its business in public. Generally speaking, the public has a right of access to documents filed with the Court. There are certain things that are so inherently private that public access may legitimately be restricted, e.g., a person's Social Security number; a person's private contact information; depending on the circumstances, a person's criminal history; depending on the circumstances, a person's medical history. There are some things that are legitimately considered to be a business's trade secrets that, if publicized, could cause significant and unwarranted harm to the business. This Court urges parties either not to file documents that contain such information or, if filing is critical, to redact the private personal information or trade secret information if possible. As a last resort the Court restricts public access to the document.

The Court reviewed ECF No. 160, which is a brief summarizing the holdings of *Brady v. Maryland,* 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972), and asking the Court to apply those holdings to certain documents whose contents are not revealed in the brief. The Court found at the time, and still finds despite defendants' motion for reconsideration, that there is no basis whatsoever for restricting public access to that brief.

The Court also reviewed ECF No. 161, which in addition to being the motion for an *ex parte in camera review* attaches the documents that the government wants the Court to review. The motion explained the reasons why the government believes that it does not have an obligation to produce the documents pursuant to its *Brady* and *Giglio* obligations. Because the motion discussed medical information and other sensitive personal information, the Court granted ECF No. 159 to the extent it requested restricted access to the document. ECF No. 182, in which defendants complain that the Court should not have granted access before hearing from

them (about documents as to which defendants have no knowledge) does not change my mind at all.  The motion and its attachments deserved restricted access, at least until the Court had an opportunity to review the underlying documents *in camera.*

I have now reviewed the documents, filed as ECF Nos. 161-1 through 161-4, *in camera.* I find that

- The document filed as ECF No. 161-1 need not be produced, and that restricted access is appropriate.

- The document filed as ECF No. 161-2 should be produced and be publicly accessible so long as the redactions actually cover the redacted material.

- The document filed as ECF No. 161-3 is not discoverable and should not be publicly accessible.

- The document filed as ECF No. 161-4 should be produced and be publicly accessible so long as the redactions actually cover the redacted material.

16. **Defendants' Motion for Leave to Restrict Public Access to Two Oppositions to the Division's Supplemental Motions in Limine, ECF No. 183: GRANTED.**

Defendants seek restricted access to two previously filed documents, ECF Nos. 177 and 179.  ECF No. 177 is defendants' opposition to the government's motion in limine regarding certain criminal convictions and extramarital affairs (ECF No. 139, which was itself a restricted document).  ECF No. 179 is defendant's opposition to the government motion in limine regarding attorney proffers (ECF No. 141, which was not a restricted document).

The Court grants the motion as to restriction of access to ECF No. 177 because that document contains private criminal history information that is not relevant to this case.  The

Court accepts defendants' representation that ECF No. 179 and its exhibits contain confidential grand jury information, and on that basis (but not necessarily because the government does not oppose the motion) grants the motion as to restricted access to ECF No. 179.

17.     **Joint Motion of the Parties for Brief Questionnaire to Potential Jurors, ECF No. 187: GRANTED.**

The Court allows attorney voir dire in all cases.  It normally does not impose time limits on voir dire, although attorneys are advised that the Court will intervene if their voir dire becomes too repetitive or boring.  The Court also has no objection to the use of a questionnaire.

However, the Court has revised your proposed questionnaire and eliminated questions 4-6.  The Court asks six basic questions of prospective jurors before the attorneys' voir dire, and they include asking what type of work the individual does (or did if not currently employed), and the same for the person's spouse or partner, if any.  The prospective jurors are informed that they may identify their specific place of employment if they wish, but they are not required to do so, and counsel may not inquire about the specific employer if the prospective juror does not volunteer the information.

Also, the Court will not permit counsel to ask questions that have already been asked and answered via the questionnaire.  Counsel may, of course, ask follow-up questions prompted by the individual's answer.

18.     **Defendants' Unopposed Motion for Leave to Restrict Public Access to Exhibits Accompanying Defendants' Notice Identifying Specific James Log Entries for Particular Objection, #195: GRANTED.**

This motion requests that public access to two other documents be restricted: ECF No. 193, which lists the defendants' specific challenges to the government's entries on its "*James* log;" and ECF No. 194, the government's *James* log, annotated with defendants' objections. The government does not object to the motion, although that is not dispositive. The Court grants the motion because the two documents provide somewhat detailed information about communications and actions of individuals who are not parties to the case and have not been charged with any misconduct.

DATED this 21st day of March, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge