IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DAVITA INC.,
2. KENT THIRY,

    Defendants.

## UNITED STATES' MOTION FOR A *DAUBERT* HEARING AND TO EXCLUDE CERTAIN OPINIONS

On March 20, 2022, Defendants disclosed for the first time the actual analysis performed by their proffered expert, Dr. Pierre-Yves Cremieux, backing up the opinions in Sections V and VI of his expert report produced to the United States on March 11, 2022 (ECF No. 202) (hereinafter "Report").  In order to satisfy the Court's gatekeeping function under Rule 702, the United States requests a *Daubert* hearing "outside the presence of the jury but during the time scheduled for the trial," Order on Pending Mots. at 3, and specifically after the United States concludes its case-in-chief.  This will allow the United States time to explore the basis for the methods that Dr. Cremieux disclosed in Sections V and VI of his report and test whether those methods satisfy Rule 702.  The United States anticipates using no more than 45 minutes for its cross-examination of Dr. Cremieux at a *Daubert* hearing.  Defendants do not oppose this request.

In addition, the United States moves to exclude Dr. Cremieux's opinions in Sections IV, VII, and VIII of his Report under Rule 702.  The opinions in Sections IV and VIII will not assist the jury and the opinion in Section VII is irrelevant to a per se Sherman Act violation.  Defendants oppose this request.

**BACKGROUND**

At the March 3, 2022 hearing on the United States' first motion to exclude Defendants' expert (ECF No. 101), Defense counsel acknowledged that he knew what Dr. Cremieux would testify to "[b]ased on his analysis," Tr. at 12:15-20, that Dr. Cremieux "analyzed data," and that "[t]here's output from that analysis of data," *id.* at 13:4-10.  However, it was not until March 20, 2022, after repeated inquiries by the United States, and eight days before trial, that Defendants produced "the populated output files" that showed Dr. Cremieux's data analysis.

**LEGAL STANDARD**

Defendants bear an independent "burden of showing that [their] proffered expert's testimony is admissible" under Rule 702. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).  Expert testimony is admissible only if it "will help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), "is based on sufficient facts or data," *id.* 702(b), "is the product of reliable principles and methods," *id.* 703(c), and "the expert has reliably applied the principles and methods to the facts of the case," *id.* 703(d).  "Put another way, the evidence must be both relevant and reliable."  *Heatherman v. Ethicon, Inc.*, 2020 WL 5798533, at *2 (D. Colo. Sept. 29, 2020) (Jackson, J.) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)).

Rule 702 sets up an important gatekeeping function that "requires a district court to assess proffered expert testimony to ensure it is both relevant and reliable."  *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012).  "Although a district court has discretion in how it performs its gatekeeping function, 'when faced with a party's objection, [the court] must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper.'"  *Id.* (quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088

(10th Cir. 2000)).  To do this, the Court "must assess the 'reasoning and methodology underlying the expert's opinion,' and must ultimately determine 'whether it is scientifically valid and applicable to a particular set of facts." *Heatherman*, 2020 WL 5798533, at *2 (quoting *Goebel*, 215 F.3d at 1087).

The Court "has discretion as to how to perform this gatekeeping function." *Heatherman*, 2020 WL 5798533, at *2.  And although this "is not a role that emphasizes exclusion of expert testimony," the proponent still has a burden of establishing, and the Court still must find, that the testimony is relevant and reliable.  *Id.*; *see also United States v. Yurek*, 2017 WL 2930577, at *2 (D. Colo. July 7, 2017) ("[S]ince Defendants are now on notice of the Government's *Daubert* challenge, they must carry that burden in their disclosure and/or response to Defendant's Motion, and cannot simply wait until trial to make at least a *prima facie* showing of admissibility under Rule 702.").  A *Daubert* hearing is typically held to make this determination.  *See Nacchio*, 555 F.3d at 1253.

## ARGUMENT

### A. The Court Should Hold a *Daubert* Hearing to Determine the Reliability of the Section V and VI Opinions

Defendants bear the burden of showing that Dr. Cremieux's opinions are admissible under Rule 702.  *Nacchio*, 555 F.3d at 1241.  Typically, that is done through a *Daubert* hearing.  *Id.* at 1253.  As discussed in the United States' first motion to exclude, there are serious questions about Dr. Cremieux's data, method, and application of the method to the data.  *See* ECF No. 101.  Dr. Cremieux's expert report did not resolve these concerns.

In Section V of his expert report, Dr. Cremieux disclosed he "calculate[d] the difference between DaVita's average annual job-to-job turnover rate and the average annual benchmark rate."  Report at 19.  In Section VI, Dr. Cremieux disclosed that he "examine[d] how the

3

difference between senior-level DaVita salaries and a national benchmark changed during the alleged conspiracy periods." *Id.* at 20.  The United States is only now in a position to fully analyze his approaches in Sections V and VI, given the late production of "output files" on March 20, 2022.  But nowhere in the expert report does Dr. Cremieux cite a scholarly article that has ever taken this approach to determining whether an employee allocation agreement existed.  Moreover, Dr. Creiuex's report does not justify why he used a "difference-in-difference" approach to perform both analyses.  The United States should be permitted to cross examine Dr. Cremieux at a *Daubert* hearing for the Court to assess the reliability of these opinions.

    **B.**  **Section IV and VIII Opinions Do Not "Assist the Trier of Fact"**

    Expert opinion must be based on "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a); *see also United States v. Vann*, 776 F.3d 746, 757 (10th Cir. 2015) ("[D]istrict court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact before permitting a jury to assess such testimony." (cleaned up)).

    Dr. Cremieux's expert report discloses two opinions in Section IV that will not assist the jury in analyzing the evidence.  Section IV.A purports to opine how "senior-level employees continued to move between DaVita and SCA during the alleged SCA conspiracy period, and DaVita employees continued to move to Hazel and Radiology Partners during the alleged Hazel and Radiology Partners conspiracy periods, respectively." Report ¶ 31.  Section IV.B purports to opine that "the available evidence provides several examples in which DaVita employees received promotions and/or raises after providing notice that they were considering outside job offers." *Id.*

Defendants may try to admit evidence of employees moving between the conspiring companies or evidence that "DaVita employees received promotions and/or raises after providing notice that they were considering outside job offers." Report ¶ 31. But no expert is needed to get that evidence in front of a jury. Nor is an expert needed to explain that evidence to a jury. Evidence of employees moving jobs or employees receiving promotions/raises is evidence that the jury is well capable of digesting on its own. As a result, Dr. Cremieux's opinions in Section IV should be excluded as not "help[ful] [to] the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a).

In Section VIII, Dr. Cremieux purports to opine that "the alleged conduct with respect to certain limitations on recruiting and hiring senior-level employees was consistent with SCA's independent self-interest and cannot be used to infer the existence of a labor market allocation agreement with the purpose of stifling competition for labor." Report ¶ 35. The question before the jury, however, is whether the alleged agreement existed. The fact that SCA *could have* decided unilaterally not to hire DaVita employees is irrelevant and encourages the jury to speculate.

      **C.**    **Section VII Opinion Is Irrelevant to a Per Se Case**

In Section VII, Dr. Cremieux's opinion concludes that, because of "the scope of employment options for senior-level employees at DaVita is broad, with DaVita competing with hundreds of other organizations," the "market allocation agreements between DaVita and the three companies could not reasonably be expected to restrict labor competition and suppress compensation." Report ¶ 34. But whether conspirators "have power to control the market" is irrelevant to a per se case. *United States v. Socony-Vaccum Oil Co.*, 310 U.S. 150, 224 n.59 (1940).

## CONCLUSION

For the foregoing reasons, the Court should hold a *Daubert* hearing, after the United States concludes its case-in-chief, to perform its gatekeeping function under Rule 702 and exclude Defendants' expert as unreliable (with respect to Sections V and VI), not helpful to the jury (with respect to Sections IV and VIII), and irrelevant (Section VII).

DATED: March 24, 2022                     Respectfully submitted,

/s/ William J. Vigen
William J. Vigen, Trial Attorney
Megan S. Lewis, Assistant Chief
Anthony W. Mariano, Trial Attorney
Sara M. Clingan, Trial Attorney
Terence A. Parker, Trial Attorney
U.S. Department of Justice, Antitrust Division
Washington Criminal II Section
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: 202-598-2737 / 202-598-8145 / 202-480-1951 / 202-353-2411 / 202-705-6156
FAX: 202-514-9082
E-mail: william.vigen@usdoj.gov
megan.lewis@usdoj.gov / anthony.mariano@usdoj.gov
sara.clingan2@usdoj.gov / terence.parker2@usdoj.gov

## CERTIFICATE OF CONFERENCE

In compliance with Local Rule 7.1(a), the United States conferred with counsel for Defendants regarding this motion on March 24, 2022. Defendants do not oppose the request for a *Daubert* hearing. Defendants oppose the exclusion of Dr. Cremieux's testimony.

## CERTIFICATE OF SERVICE

On March 24, 2022, I filed this document with the Clerk of the Court using CM/ECF, which will serve this document on all counsel of record.

/s/ William J. Vigen
William J. Vigen