# Exhibit B

The first element is the existence of a conspiracy to allocate the market for employees as charged in each count of the Indictment.  To understand this element, I first must explain the concept of allocating a market.  In the instruction I gave at the beginning of jury selection I used the example of allocating a market for customers.  If two or more companies or individuals are competing for the same customers, it is unlawful for them to agree to divide the customers between or among them.  Suppose that in Denver there were two companies selling auto parts.  It would be unlawful for the two companies to agree to allocate the market for Denver customers.  For example, it would be an unlawful market allocation agreement if they agreed that Company A would only sell to customers who reside north of Sixth Avenue and Company B would sell only to customers who reside south of Sixth Avenue; or if they agreed that Company A would be the only company allowed to sell to Honda owners; or if they agreed that Company A would not sell to anyone who has been a customer of Company B, and vice versa.  Those are hypothetical examples of an unlawful market allocation agreement, the market being customers who purchase auto parts in Denver.  The customers could, of course, purchase their auto parts from auto parts stores in Colorado Springs or Fort Collins.  But, if they wanted to purchase auto parts in Denver, they would only be able to buy from A or B, and potential competition between A and B for those customers — that is, in that market for customers between A and B — would have been unlawfully restrained.  Normal competition, such as reducing the prices of their respective products to woo customers away from their competitor, would have been undermined by the agreement.  The same concept can be applied to a market for employees.

In this case the government claims in Count 1 that DaVita and Surgical Care Affiliates were potentially competing for the same employees; namely, senior level employees who were working either for DaVita or Surgical Care Affiliates.  The market, therefore, is ~~employment opportunities for~~ senior level employees at each other's companies.  The government contends that the companies, through their respective Chief Executive Officers Kent Thiry and Andrew Hayek, entered into agreements and understandings with the purpose of unlawfully allocating the market by ending meaningful competition between the two companies for their senior level employees.  ~~There are other companies in the health care industry and other industries that potentially would hire these same senior level employees, but that is not the market that is the subject of this case.~~

The government has the burden as to Count 1 to prove, beyond a reasonable doubt, that Mr. Thiry and/or DaVita conspired with Surgical Care Affiliates to allocate the market for those senior level employees during the time period charged.  The government also has the burden to prove beyond a reasonable doubt that defendants had the purpose of allocating that market.  Defendants deny that the agreements and understandings between Mr. Thiry and Mr. Hayek allocated the market and also deny that Mr. Thiry's intent was to allocate the market.  Remember, the defendants have no burden to prove anything.

Count 2 charges a conspiracy between DaVita and Hazel Health to allocate the market of employees who had jobs at DaVita, not just senior employees, during the time period applicable to that count.  Count 3 charges a conspiracy between DaVita and Radiology Partners to allocate the market of employees who had jobs at DaVita, not just senior employees, during the time period applicable to that count.  However, while the alleged co-conspirators, the alleged markets, and the alleged time periods are different, the basic concepts described in this instruction concerning Count 1 also apply to Counts 2 and 3.

You may find that a conspiracy to allocate the market for employees existed even if you find that employees' switching employers was possible and actually happened in some cases. However, you may not find that a conspiracy to allocate the market for the employees existed unless you find that the alleged agreements sought to end meaningful competition for the services of the affected employees.