IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. DAVITA INC.,
2. KENT THIRY,

      Defendants.

---

**UNITED STATES' REPLY TO DEFENDANTS' RESPONSE TO THE COURT'S PROPOSED MARKET ALLOCATION JURY INSTRUCTION**

---

The United States supports the Court's proposed market allocation jury instruction. The edits to the instruction that Defendants have proposed should be rejected, and their arguments that the Court's instructions are reversible error and a due process violation are unfounded and nothing more than an attempt to relitigate the application of the per se rule.

**I.   The Court's Proposed Instruction Correctly Characterizes the Employee Market Allocations Charged in the Indictment and Follows the Court's Prior Rulings and Applicable Precedent**

The Court's proposed instruction will properly instruct the jury on the employee market allocation conspiracies charged in the Indictment, and the language that Defendants wish to excise is necessary to correct Defendants' improper statements that the market at issue is broader than what was charged in the Indictment.[1] As the Court has already ruled as a matter of law, in a per se offense, the United States does not need to define or prove a market. *See* Order Resolving

---

[1] The United States' objection was not untimely. It was raised after the opening statement outside the presence of the jury since it related to a matter of law, and it was raised prior to the jury hearing evidence.

1

Disputes on Proposed Jury Instructions, ECF No. 214 at 4–5 ("The government does not need to define the 'market' allegedly allocated to carry its burden of proof.  Market allocation agreements between horizontal competitors — actual or potential competitors at the same level of the market structure — are per se unreasonable restraints of trade in violation of the Sherman Act. *United States v. Topco Associates, Inc.*, 405 U.S. 596, 608 (1972).").  Unlike a rule of reason case, in a per se case, market definition is not required—it is only necessary that the agreement be between horizontal competitors.  Here, the factual question for the jury on the first element is whether the employee market allocation conspiracy in each count charged in the Indictment existed—which charges that DaVita was a competitor for employees to each of the companies in each of the three counts.  *See* Indictment ¶¶ 6, 16, 24, ECF No. 74; *see also United States v. Suntar Roofing, Inc.*, 709 F. Supp. 1526, 1536 (D. Kan. 1989), *aff'd*, 897 F.2d 469 (10th Cir. 1990) ("The existence of the conspiracy is an essential element of this crime.").

     Defendants' citations to rule of reason cases, monopolization cases, and civil pleading standards are simply irrelevant.  *See, e.g.*, *Bogan v. Hodgkins*, 166 F.3d 509 (2d Cir. 1999) (rule of reason); *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958 (10th Cir. 1994) (rule of reason); *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509 (10th Cir. 1984) (monopolization case); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012) (civil case related to sufficiency on a motion to dismiss); *Deslandes v. McDonald's USA, LLC*, 2018 WL 3105955, at *7 (N.D. Ill. June 25, 2018) (applying "quick look" rule of reason test based on ancillarity).  The *In re High-Tech Employee Antitrust Litigation* case in fact supports the United States' position.  It expressly notes that because the plaintiffs successfully pled a per se violation of the Sherman Act "no market analysis is required at this time." 856 F. Supp. 2d at 1122 (citing *United States v. Socony–Vacuum Oil*, 310 U.S. 150, 224 n.59 (1940)

(noting that a per se Section 1 violation does not require evidence of market power or the ability to affect prices); *Datagate, Inc. v. Hewlett–Packard Co.*, 60 F.3d 1421, 1425 (9th Cir.1995) ("The foundational principle of *per se* antitrust liability is that some acts are considered so inherently anticompetitive that no examination of their impact on the market as a whole is required.")).[2] The Court has already concluded that the charged conspiracies are per se unlawful, and it should reject Defendants' efforts to relitigate this issue and, in effect, turn this into a rule of reason case.

        Defendants' arguments that they did not conspire with all competitors, and did not eliminate all competition, have been rejected by the Court, consistent with the well-established law governing per se antitrust offenses. *See* ECF No. 214 at 8 ("Finally, the government need not prove that defendants allocated the entire market for employees. The Tenth Circuit made this clear when it said that an agreement may be a horizontal market allocation agreement even though 'the alleged agreement would only affect a small number of potential customers.'" (quoting *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1277 (10th Cir. 2018)); *see also Socony-Vacuum Oil Co.*, 310 U.S. at 220, 224 n.59 ("[T]he fact that sales on the spot markets were still governed by some competition is of no consequence. . . . The group making those agreements may or may not have power to control the market."); *United States v. Cooperative Theatres of Ohio, Inc.*, 845 F.2d 1367, 1373 (6th Cir. 1988) (holding that a nonsolicitation agreement was per se unlawful even where it allowed customers who were not solicited to switch suppliers); *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1088 (5th Cir. 1978)

---

[2] Defendants' response also includes lengthy quotes related to submarkets. Def. Resp. at 4. The citation to *In re: High-Tech Employee Antitrust Litigation* for these quotes is not accurate. Defendants appear to be quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962), a civil Clayton Act merger challenge, which discussed submarkets because of the requirements of Section 7 of the Clayton Act.

(holding that "their agreement to suppress all competition as to one phase of their business, i.e., old customers, should be per se, illegal irrespective of their competition for new customers"); *Blackburn v. Sweeney*, 53 F.3d 825, 827 (7th Cir. 1995) (holding agreement between just two law firms not to advertise in one another's territories was per se unlawful market division, rejecting defendant's contention that "because all parties to the Agreement can still practice law in all parts of Indiana, the mutual geographic restrictions on advertising do not constitute an allocation of markets").  The Sherman Act does not allow two competitors to rig bids with each other, even if there are other bidders on a particular project.  Nor does it allow two competitors to fix prices with each other, even if there are other suppliers.  And the same is true here—the Sherman Act does not allow two competitors for employees to agree not to compete for employees, even if there may be other employers out there.

Defendants' suggestion that the Court's proposed language "relieves the government of the burden to prove that the alleged no-solicitation agreements had the purpose of allocating—ceasing meaningful competition in—a genuine market," Def. Resp. at 11, is simply incorrect.  The Court's proposed instruction is entirely consistent with the charges in the Indictment, the Court's motion to dismiss ruling, and its order resolving disputes on the jury instruction.  This instruction merely explains to the jury how to correctly understand the employee market allocation conspiracies that have been charged in each count of the Indictment, and what the United States must prove for each of them.  It is consistent with the requisite intent that the Court has found that the United States must prove, including having the purpose to allocate the employee market in each count in order to suppress meaningful competition in it.

The jury will be asked to decide if the United States has met its burden to prove beyond a reasonable doubt that Defendants knowingly joined the three charged conspiracies with a

purpose of allocating the market for employment opportunities for SCA's and DaVita's senior-level employees (Count 1) and for DaVita's employees (Counts 2 and 3) between the competitor companies as charged in each count of the Indictment. The United States has elicited testimony from its witnesses to demonstrate that the no-poach agreements between the relevant competitors had the intended purpose of suppressing meaningful competition between them—including testimony that DaVita employees, and senior-level employees at SCA and DaVita, were in demand; that solicitations themselves were a valuable and a meaningful part of recruiting; and that the purposes of the employer notification were to monitor the agreements and chill employee movement. The United States has also elicited testimony from its witnesses that DaVita and the co-conspirator companies' activities that were the subject of the conspiracies, i.e., employee movement, salaries, and recruiting activities, took place across state lines in order to establish the interstate commerce element. Neither the Court nor the United States has in any way suggested that the Indictment charges broader markets, nor altered the Court's prior rulings on intent. Defendants' efforts to suggest otherwise ring hollow.

## II.     The Court's Instruction Does Not Violate Defendants' Due Process Rights

There is no due process violation. The Indictment provided notice that the crime charged was a per se offense, and it set forth the charges of allocation of employees between the relevant competitors in each Count. *See* Indictment, ¶¶ 9, 17, 25, ECF No. 74 (charging that for the identified competitor to DaVita in each Count that the relevant conspiracy was to "to suppress competition *between them*" (emphasis added); and that each of the conspiracies was "a per se unlawful, and thus unreasonable, restraint of interstate trade and commerce . . . ."). As the Court ruled on January 28, 2022, in its order on the motion to dismiss, there was no due process violation from the charges in the Indictment, and Defendants have been on notice that they

5

would be defending a per se case under the well-established principles of antitrust law governing per se illegal offenses. ECF No. 132 at 18–19 ("This decision makes no novel construction of Section 1 of the Sherman Act. . . . This order, holding that the case can proceed under a per se theory, will not deprive defendants of their right to a full and fair jury trial."). And on March 25, 2022, Defendants had the benefit of the Court's Order Resolving Disputes on Jury Instructions, which rejected Defendants' contention that the United States must prove a national employment market. ECF No. 214 at 4 ("Finally, defendants' proposal to add the words 'across the United States' should be denied for improperly characterizing the superseding indictment."). The Court's preliminary instruction likewise explained for Count 1 that the "government claims that the purpose of the conspiracy was to allocate the market for *the companies' senior-level employees by suppressing meaningful competition between them for such employees*." Court's Prelim. Instr., ECF No. 234 at 2 (emphasis added). Defendants were on notice that their market arguments were improper, and nothing the Court has done has shifted any burden away from the United States and on to Defendants. The fact that Defendants have chosen to concede the existence of the charged agreements does not entitle them to expand the elements of the crime.

### III. The Final Instructions Should Include Two General Points Related to Conspiracy

The United States believes the Court's proposed market allocation instruction should be given as proposed. The United States understands that the parties will have the opportunity at the charge conference to address further points on the final set of jury instructions, consistent with the Court's order. ECF No. 214 at 1. In light of the arguments that the Defendants made in their Response and evidence that they elicited on cross-examination, the United States notes the following two points of law that should be included in some instruction in the final charge. These two points are appropriate and ordinarily given in every per se case, and they are

especially important here to explain the law and the government's burden to the jury, given the Defendants' arguments and cross-examinations.

First is an instruction that the agreement is the crime, as it is with any conspiracy offense, and thus success or lack thereof is not an element of the offense. The Court noted in its order on jury instructions that the charge here is a conspiracy, *see* ECF No. 214 at 6 (". . . in this case, a conspiracy to actually allocate…"), and certainly the point is implicit in the Court's market allocation instruction. However, given that the jurors may be unfamiliar with conspiracy offenses, the United States proposes to instruct them on this point expressly. *See* Revised Joint Set of Proposed Instructions, ECF No. 229 at 38–39; *see also Socony-Vacuum Oil Co.*, 310 U.S. at 224 n.59 (rejecting argument that "power or ability to commit an offense was necessary in order to convict a person of conspiring" in violation of Section 1 of the Sherman Act because "it is well established that a person 'may be guilty of conspiring, although incapable of committing the objective offense'"); *United States v. Reicher*, 983 F.2d 168, 170–72 (10th Cir. 1992) (holding that "the determination of a per se antitrust violation depends on whether there was an agreement to subvert the competition, not on whether each party to the scam could perform").

The second point relates to justification evidence. Defendants' response suggests that they are seeking to sweep in justification evidence under the argument that such evidence goes to intent. Def. Resp. at 14. The Court has already ruled that justification or reasonableness evidence and arguments are not permissible. ECF No. 214 at 10–11 ("I agree with the government that it would be impermissible to introduce evidence to justify the market allocation agreement. Per se rules cut through the rule of reason — if defendants entered into an agreement that violates the Sherman Act per se, *it is immaterial whether such an agreement was actually good for the company or even good for the market as a whole*." (emphasis added)); Order

7

Denying Motion to Dismiss, ECF No. 132 at 12–13 ("Whether a practice has procompetitive aspects is only relevant in two circumstances. . . . The situation here does not fall into either of these categories."); *see also Socony-Vacuum*, 310 U.S. at 221–22 (the Sherman Act does not allow as justifications "the good intentions of the members of the combination"); *Kemp & Assocs.*, 907 F.3d at 1277 (noting that "Supreme Court jurisprudence is clear: where the per se rule applies, it is of no consequence that an agreement could potentially bring net economic benefits to some part of the market—here to the alleged conspirators."); *Cadillac Overall Supply Co.*, 568 F.2d at 1088 (rejecting defense argument that market allocation scheme was necessary because "free and open competition would result in the raiding of accounts which would result in the loss of this capital investment" to obtain customers). While the Court permitted this evidence to be introduced at trial as relevant to purpose, the Court should now instruct the jurors clearly that they should not consider it as justification. *See, e.g.*, ECF No. 229 at 38–39, 48.

Dated:  April 10, 2022                     Respectfully submitted,

*/s/ Megan S. Lewis*
Megan S. Lewis, Assistant Chief
Sara M. Clingan, Trial Attorney
Anthony W. Mariano, Trial Attorney
William J. Vigen, Trial Attorney
Terence A. Parker, Trial Attorney
U.S. Department of Justice, Antitrust Division
Washington Criminal II Section
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: 202-598-8145
FAX: 202-514-9082
E-mail: megan.lewis@usdoj.gov

9

**CERTIFICATE OF SERVICE**

On April 10, 2022, I filed this document with the Clerk of the Court using CM/ECF, which will serve notice on all counsel of record.

*/s/ Megan S. Lewis*
Megan S. Lewis
Assistant Chief
